## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| SCOTT BOEHM; and DAVID STLUKA,<br><br>    *Plaintiffs*,<br><br>        v.<br><br>SCHEELS ALL SPORTS, INC.; SCOTT SVEHLA;<br>SCOTT'S BREWERY COLLECTIBLES; NICHOLAS<br>MARTIN; SPORTS-4-LESS; LUKE WEIN; BEYOND<br>STUDIO + PUBLISHING, LLC; JOHN DOE 1 (aka<br>"SCOOTER G"); SCOOTER G SPORTS; MICHAEL<br>LOVELACE; 22 PROMOTIONS, LLC; SIGNATURE<br>SPORTS; ANDREW WREDBERG; AW<br>ARTWORKS LLC; JESSE WINIECKI; AMANDA<br>McVEIGH; JOHN GEORGE; GAMEDAY SPORTS;<br>ANGELA CLEARY; EVENT USA CORP. (dba "THE<br>VAULT"); BRIAN BOPREY AND NANCY BOPREY<br>(dba "BALLS AND STRIKES"),<br><br>    *Defendants*. | Civil Case No. 15-cv-379<br><br><br><br>**COMPLAINT AND DEMAND<br>FOR JURY TRIAL** |

Plaintiffs SCOTT BOEHM and DAVID STLUKA, by and through undersigned counsel, pursuant to the applicable Federal Rules of Civil Procedure and the Local Rules of this Court, demands a trial by jury of all claims and issues so triable, and for their Complaint against Defendants SCHEELS ALL SPORTS, INC.; SCOTT SVEHLA; SCOTT'S BREWERY COLLECTIBLES; NICHOLAS MARTIN; SPORTS-4-LESS; JOHN DOE 1 (aka "SCOOTER G"); SCOOTER G SPORTS; MICHAEL LOVELACE; 22 PROMOTIONS, LLC; SIGNATURE SPORTS; LUKE WEIN; BEYOND STUDIO + PUBLISHING, LLC; ANDREW WREDBERG; AW ARTWORKS LLC; JESSE WINIECKI; AMANDA McVEIGH; JOHN GEORGE; GAMEDAY SPORTS; ANGELA CLEARY; EVENT USA CORP. (dba "THE VAULT"), and BRYAN BOPREY AND NANCY BOPREY (dba "BALLS AND STRIKES"), hereby assert and allege as follows:

## THE PARTIES

### *Plaintiffs*

1.      Plaintiff Scott Boehm ("Boehm") is a photographer who makes his living taking and licensing sports-related photographs.  Plaintiff Boehm is a resident of the state of Illinois.

2.      Plaintiff David Stluka ("Stluka") is a photographer who makes his living taking and licensing sports-related photographs.  Plaintiff Stluka is a resident of the state of Wisconsin.

3.      Plaintiffs specialize in creating sports-related photography primarily related to or involving Wisconsin sports teams, including the University of Wisconsin Badgers, Milwaukee Brewers, and Green Bay Packers.

### *Scheels All Sports, Inc.*

4.      Upon information and belief, Defendant Scheels All Sports, Inc. ("Scheels") is a business entity, form unknown, existing under the laws of the state of North Dakota and doing business in various states, including Wisconsin.

5.      According to its website, Scheels owns and/or operates twenty-five (25) store locations in ten (10) different states, including stores in Eau Claire and Appleton, Wisconsin.

6.      Defendant Scheels is a retail business specializing in selling sports products, apparel, and collectibles, including canvases, prints, posters, and other memorabilia.

7.      Upon information and belief, Defendant Scheels owns and/or operates a website located at http://www.scheels.com through which it advertises and sells its products and otherwise promotes its stores and brand.

8.      Defendant Scheels advertises and offers for sale certain products on its website that it identifies as "Manufacturer Direct Items" which, upon information and belief, include

2

posters, prints, and other sports collectibles that Scheels creates on demand for its customers from electronic copies of photographs in its possession, custody, or control.

9. In its store locations in Wisconsin and through its website and social media outlets, Scheels publishes, advertises, displays, and offers for sale sports collectibles for various Wisconsin sports teams, including the University of Wisconsin Badgers, Milwaukee Brewers, and Green Bay Packers.

10. Upon information and belief, certain of the products and collectibles created, displayed, published, and sold by Defendant Scheels include copies of Plaintiffs' photographs at issue in this action.

### *Scott Svehla and Scott's Brewery Collectibles*

11. Upon information and belief, Defendant Scott Svehla ("Svehla") is, now and at all times relevant to the conduct at issue in this action, a resident of the state of Wisconsin.

12. Upon information and belief, Defendant Svehla owns and/or does business as Scott's Brewery Collectibles.

13. Upon information and belief, Defendant Svehla is the founder and sole owner of Scott's Brewery Collectibles and is responsible for the actions of Scott's Brewery Collectibles, including selecting the products it displays and sells and the websites it created and published as well as all other actions and conduct by Scott's Brewery Collectibles alleged herein.

14. Upon information and belief, Defendants Svehla and Scott's Brewery Collectibles conduct business at various locations in Wisconsin, including but not limited to operating stores in Greendale and Madison, Wisconsin.

15.     Upon information and belief, Defendants Svehla and Scott's Brewery Collectibles also own and/or operate stores in the state of Illinois, including but not limited to stores located in Vernon Hills, Schaumberg, Lombard, Aurora, and Orland Park, Illinois.

16.     Defendants Svehla and Scott's Brewery Collectibles are in the business of selling sports collectibles, including prints, posters, canvases, and other memorabilia.

17.     In their store locations in Wisconsin and Illinois, Defendants Svehla and Scott's Brewery Collectibles publish, advertise, display, and offer for sale sports collectibles for various Wisconsin sports teams, including the University of Wisconsin Badgers, Milwaukee Brewers, and Green Bay Packers.

18.     Upon information and belief, certain of the products and collectibles created, displayed, published, and sold by Defendants Svehla and Scott's Brewery Collectibles include copies of Plaintiffs' photographs at issue in this action.

### *Nicholas Martin and Sports-4-Less*

19.     Upon information and belief, Defendant Nicholas Martin ("Martin") is a resident of the state of Illinois.

20.     Upon information and belief, Defendant Martin owns and/or does business as Sports-4-Less.

21.     Upon information and belief, Defendant Martin is the founder and sole owner of Sports-4-Less and is responsible for the actions of Sports-4-Less, including selecting the products it displays and sells and the websites it created and published as well as all other actions and conduct by Sports-4-Less alleged herein.

22.     Defendants Martin and Sports-4-Less are in the business of selling sports collectibles, including prints, posters, canvases, and other memorabilia.

23.     Defendants Martin and Sports-4-Less own and/or operate a website located at http://www.sports-4-less.com through which they advertise and sell their products and otherwise promote their store and brand.

24.     Defendants Martin and Sports-4-Less created and control a Facebook page located at https://www.facebook.com/pages/Sports-4-Less/145632152192857.

25.     Defendants Martin and Sports-4-Less created and control a Twitter feed located at https://twitter.com/sports_4_less.

22.     Defendants Martin and Sports-4-Less created and control a YouTube user channel located at https://www.youtube.com/user/Sports4Less.

27.     Defendants Martin and Sports-4-Less use their website, Facebook page, Twitter feed, and YouTube channel to advertise and promote their store, brand, and products.

28.     Upon information and belief, Defendants Martin and Sports-4-Less also sell their products through third-party retail websites, including but not limited to www.amazon.com.

29.     Upon information and belief, Defendants Martin and Sports-4-Less sell their products through Amazon.com under the fictitious name "Canvas King."

30.     In their store locations and through their website and social media outlets, Defendants Martin and Sports-4-Less publish, advertise, display, and offer for sale sports collectibles for various Wisconsin sports teams, including the University of Wisconsin Badgers, Milwaukee Brewers, and Green Bay Packers.

31.     Upon information and belief, certain of the products and collectibles created, displayed, published, and sold by Defendants Martin and Sports-4-Less include copies of Plaintiffs' photographs at issue in this action.

5

32.     Upon information and belief, Defendants Martin and Sports-4-Less copied, distributed, and sold products that included copies of Plaintiffs' images at issue in this action to businesses and individuals who reside in Wisconsin.

### *"Scooter G" and Scooter G Sports*

33.     Upon information and belief, Defendant John Doe 1, real name unknown, identifies himself on the website of Scooter G Sports as "Scooter G" (hereinafter "Scooter G").

34.     Upon information and belief, Defendant Scooter G is, now and at all times relevant to the conduct at issue in this action, a resident of the state of Wisconsin.

35.     Upon information and belief, Defendant Scooter G owns and/or does business as Scooter G Sports.

36.     Upon information and belief, Defendant Scooter G is the founder and sole owner of Scooter G Sports and is responsible for the actions of Scooter G Sports, including selecting the products it displays and sells and the websites it created and published as well as all other actions and conduct by Scooter G Sports alleged herein.

37.     Upon information and belief, Defendants Scooter G and Scooter G Sports conduct business at various locations in Wisconsin, including but not limited to operating a store located in Appleton, Wisconsin.

38.     Defendant Scooter G and Scooter G Sports are in the business of selling sports collectibles, including prints, posters, canvases, and other memorabilia.

39.     Defendants Scooter G and Scooter G Sports own and/or operate a website located at http://www.scootergsports.com through which they advertise and sell their products and otherwise promote their store and brand.

40.     Defendants Scooter G and Scooter G Sports created and control a Facebook page located at https://www.facebook.com/pages/ScooterG-Sports/107603512605776.

41.     Defendants Scooter G and Scooter G Sports created and control a Twitter feed located at https://twitter.com/scootergsports.

42.     In their store location in Wisconsin and through their website and social media outlets, Defendants Scooter G and Scooter G Sports publish, advertise, display, and offer for sale sports collectibles for various Wisconsin sports teams, including the University of Wisconsin Badgers, Milwaukee Brewers, and Green Bay Packers.

43.     Upon information and belief, certain of the products and collectibles created, displayed, published, and sold by Defendants Scooter G and Scooter G Sports include copies of Plaintiffs' photographs at issue in this action.

### *Michael Lovelace and 22 Promotions, LLC*

44.     Upon information and belief, Defendant Michael Lovelace ("Lovelace") is, now and at all times relevant to the conduct at issue in this action, a resident of the state of Wisconsin.

45.     Upon information and belief, Defendant Lovelace owns and/or does business as 22 Promotions, LLC ("22 Promotions").

46.     Upon information and belief, Defendant Lovelace is the founder and sole owner of 22 Promotions and is responsible for the actions of 22 Promotions, including selecting the photographs and products it displays and publishes on its websites as well as all other actions and conduct by 22 Promotions alleged herein.

47.     Upon information and belief, Defendants Lovelace and 22 Promotions conduct business in Wisconsin, including arranging autograph signings for athletes for Wisconsin sport teams at businesses in Wisconsin, including but not limited Scooter G Sports.

7

48.     Defendant 22 Promotions characterizes itself as a marketing, publishing, and/or advertising "firm" that, according to its website, "provide[s] expertise to clients and companies and creat[es] a VIP Experience for our fans and clients."

49.     Defendants Lovelace and 22 Promotions created and control a Facebook page located at http://facebook.com/22promotions.

50.     Upon information and belief, Defendants Lovelace and 22 Promotions conduct business in Wisconsin, including by arranging autograph signings for Wisconsin athletes that involve purchasing canvases, prints, photographs, and other products to be signed; selling autographed canvases, prints, photographs, and other products to retail businesses and directly to customers; publishing photos of autograph signings on its website directed at Wisconsin residents featuring the canvases, prints, photographs, and other products be autographed; and promoting its brand and company by giving away autographed canvases, prints, photographs, and other products to residents of Wisconsin.

51.     Upon information and belief, certain of the products and collectibles created, displayed, published, and sold by Defendants Lovelace and 22 Promotions include copies of Plaintiffs' photographs at issue in this action.

### *Signature Sports*

52.     Upon information and belief, Defendant Signature Sports is a business entity, form unknown, doing business in Illinois, including operating a store located in McHenry, Illinois.

53.     Upon information and belief, Defendant Signature Sports is in the business of selling sports collectibles, including prints, posters, canvases, and other memorabilia.

8

54.     Defendant Signature Sports obtained copies of photographs at issue in this action from individuals and businesses located in Wisconsin, including other defendants in this action and/or the Zimpriches.

55.     Defendant Signature Sports copied, advertised, displayed, published, and sold copies of photographs featuring various Wisconsin sports teams, including the University of Wisconsin Badgers, Milwaukee Brewers, and Green Bay Packers.

56.     Upon information and belief, certain of the products and collectibles created, displayed, published, and sold by Defendant Signature Sports include copies of Plaintiffs' photographs at issue in this action.

57.     Upon information and belief, Defendant Signature Sports copied, distributed, and sold products that included copies of Plaintiffs' images at issue in this action to businesses and individuals who reside in Wisconsin.

### *Luke Wein and Beyond Studio*

58.     Upon information and belief, Defendant Luke Wein ("Wein") is, now and at all times relevant to the conduct at issue in this action, a resident of the state of Wisconsin.

59.     Upon information and belief, Defendant Wein owns and/or does business as Beyond Studio + Publishing, LLC ("Beyond Studio").

60.     Upon information and belief, Defendant Wein is the founder and sole owner of Beyond Studio and is responsible for the actions of Beyond Studio, including selecting the products it displays and sells and the websites it created and published as well as all other actions and conduct by Beyond Studio alleged herein.

61.    Upon information and belief, Defendant Beyond Studio is a business entity, form unknown, doing business in Wisconsin, including operating stores located in Oconomowoc and Waukesha, Wisconsin.

62.    Defendants Wein and Beyond Studio are in the business of creating and printing canvas and other large format prints, including but not limited using sports-related photographs.

63.    Defendants Wein and Beyond Studio own and/or operate a website located at http://beyondstudioandpublishing.blogspot.com/ through which they advertise and sell their products and otherwise promote their store and brand.

64.    Defendants Wein and Beyond Studio created and control a Facebook page located at https://www.facebook.com/pages/Beyond-Studio/131177986372.

65.    Upon information and belief, Defendant Wein copied, distributed, and sold canvases and prints using copies of Plaintiffs' photos at issue in this action to businesses and individuals who reside in Wisconsin, including but not limited to Legends of the Field, LLC (hereinafter "LOF"), which operates various stores located around the greater Milwaukee area.

66.    Upon information and belief, Defendant Wein copied, distributed, and sold canvases and prints using copies of Plaintiffs' photos at issue in this action knowing that those businesses and individuals intended to resell those products to their customers, including customers in Wisconsin.

67.    In their stores and through their website and social media outlets, Defendants Wein and Beyond Studio copy, publish, print, advertise, display, and offer for sale sports prints and canvases for various Wisconsin sports teams, including the University of Wisconsin Badgers, Milwaukee Brewers, and Green Bay Packers.

68.    Upon information and belief, certain of the products and collectibles created, displayed, published, and sold by Defendants Wein and Beyond Studio included copies of Plaintiffs' photographs at issue in this action.

### *Jesse Winiecki and Amanda McVeigh*

69.    Upon information and belief, Defendant Jesse Winiecki ("Winiecki") currently is a resident of the state of Illinois, but previously was a resident of the state of Wisconsin, including at times relevant to this action.

70.    Upon information and belief, Defendant Winiecki previously owned and/or did business as Classic Sports Originals ("Classic Sports").

71.    Upon information and belief, Defendant Winiecki was the founder and owner of Classic Sports and was responsible for the actions of Classic Sports, including selecting the products it displayed and sold as well as all other actions and conduct by Classic Sports alleged herein.

72.    Upon information and belief, Classic Sports was a business entity, form unknown, doing business in Wisconsin, including operating stores located in Green Bay and Ashwaubenon, Wisconsin.

73.    Defendant Winiecki was in the business of selling sports collectibles, including prints, posters, canvases, and other memorabilia.

74.    In his Classic Sports stores, Defendant Winiecki advertised, displayed, and offered for sale sports collectibles for various Wisconsin sports teams, including the University of Wisconsin Badgers, Milwaukee Brewers, and Green Bay Packers.

75.     Upon information and belief, certain of the products and collectibles created, displayed, published, and sold by Defendant Winiecki included copies of Plaintiffs' photographs at issue in this action.

76.     Upon information and belief, Defendant Winiecki also copied, distributed, and sold images at issue in this action to businesses and individuals who reside in Wisconsin knowing that those businesses and individuals intended to use those images to create sports collectibles, including prints, posters, canvases, and other memorabilia to sell to customers in Wisconsin.

77.     Upon information and belief, Defendant Amanda McVeigh ("McVeigh") currently is or previously was during times relevant to this action a resident of the state of Wisconsin.

78.     Upon information and belief, Defendant McVeigh assisted, facilitated, enabled, and carried out certain of the infringing actions of Defendant Winiecki, including by copying Plaintiffs' photos at issue in this action to her computer and/or other electronic storage devices and copying, distributing, transferring, and selling those images to businesses and individuals who reside in Wisconsin, including but not limited to Dan and Ciara Zimprich (doing business in Madison, Wisconsin as "On 2 the Field") (hereinafter the "Zimpriches").

79.     Upon information and belief, Defendant McVeigh knew at the time that she copied, distributed, transferred, and sold electronic copies of Plaintiffs' photos at issue in this action to Wisconsin businesses and individuals, including the Zimpriches, that they intended to use Plaintiffs' images to create sports collectibles, including prints, posters, canvases, and other memorabilia to sell to customers in Wisconsin.

### *Andrew Wredberg and AW Artworks, LLC*

80.    Upon information and belief, Defendant Andrew Wredberg ("Wredberg") is, now and at all times relevant to the conduct at issue in this action, a resident of the state of Wisconsin.

81.    Upon information and belief, Defendant Wredberg owns and/or does business as AW Artworks, LLC ("AW Artworks").

82.    Upon information and belief, Defendant Wredberg is the founder and sole owner of AW Artworks and is responsible for the actions of AW Artworks, including all actions and conduct by AW Artworks alleged herein.

83.    Upon information and belief, AW Artworks is a business entity, form unknown, existing under the laws of and doing business in Wisconsin.

84.    Defendants Wredberg and AW Artworks copied, advertised, displayed, published, and sold copies of photographs for various Wisconsin sports teams, including the University of Wisconsin Badgers, Milwaukee Brewers, and Green Bay Packers.

85.    Upon information and belief, Defendants Wredberg and AW Artworks copied, distributed, and sold copies of Plaintiffs' photos at issue in this action to businesses and individuals who reside in Wisconsin knowing that those businesses and individuals intended to use those images to create sports collectibles, including prints, posters, canvases, and other memorabilia to sell to customers in Wisconsin.

### *John George*

86.    Plaintiffs previously made their photos at issue in this action available for sale and licensing through Getty Images (US), Inc.

87.     Upon information and belief, Getty Images is a New York corporation with offices located throughout the country, including in Seattle, Washington; New York, New York; and Los Angeles, California.

88.     Getty Images is the world's largest aggregator and licensor of "stock" photography, including sports-related photo collections.

89.     Upon information and belief, Getty Images has sold numerous licenses to businesses located in and residents of the state of Wisconsin.

90.     Getty Images licensed or otherwise provided copies of Plaintiffs' photos at issue in this action to businesses located in and residents of the state of Wisconsin.

91.     Getty Images operates a fully interactive website, located at www.gettyimages.com, through which customers can purchase licenses to use photos and then download copies of photos, including formerly Plaintiffs' photos at issue in this action.

92.     Upon information and belief, Defendant John George ("George") was, at all times relevant to the claims in this action, an Account Manager in the Sports department for Getty Images.

93.     Upon information and belief, Defendant George provided access to and copies of Plaintiffs' photographs at issue in this action to individuals and businesses located in Wisconsin, including but not limited to LOF.

94.     Upon information and belief, Defendant George provided access to and copies of Plaintiffs' photographs to individuals and businesses located in Wisconsin in exchange for personal favors, gifts, and other benefits provided to him from those individuals and businesses located in Wisconsin, including but not limited to LOF.

### *Angela Cleary and Gameday Sports*

95.     Upon information and belief, Defendant Angela Cleary ("Cleary") is, now and at all times relevant to the conduct at issue in this action, a resident of the state of Wisconsin.

96.     Upon information and belief, Defendant Cleary owns and/or does business as Defendant Gameday Sports ("Gameday Sports").

97.     Upon information and belief, Defendant Cleary is the founder and sole owner of Defendant Gameday Sports and is responsible for the actions of Gameday Sports, including all actions and conduct alleged herein.

98.     Upon information and belief, Defendant Gameday Sports is a business entity, form unknown, existing under the laws of Wisconsin and doing business in Wisconsin.

99.     Upon information and belief, Gameday Sports specializes in selling sports prints, posters, canvases, and other memorabilia.

100.     Upon information and belief, Defendants Cleary and Gameday Sports operate a retail store in the Bay Park Square Mall, located in Green Bay, Wisconsin.

101.     Defendants Cleary and Gameday Sports also owns and/or operates a website located at URL address http://www.gamedaysportsgb.com.

102.     Upon information and belief, certain of the products and collectibles created, displayed, published, and sold by Defendants Cleary and Gameday Sports include copies of Plaintiffs' photographs at issue in this action.

### *Event USA Corp. d/b/a The Vault*

103.     Upon information and belief, Defendant Event USA Corp. (dba The Vault) (herein after "The Vault") is a business entity, existing under the laws of the state of Wisconsin and doing business in Wisconsin.

104.    Upon information and belief, The Vault specializes in selling sports prints, posters, canvases, and other memorabilia.

105.    Upon information and belief, Defendant The Vault operates a retail store at 580 Cormier Road, Green Bay, Wisconsin.

106.    Defendant The Vault also owns and/or operates a website located at URL address http://www.thevaultgb.com/.

107.    Upon information and belief, certain of the products and collectibles created, displayed, published, and sold by Defendant The Vault include copies of Plaintiffs' photographs at issue in this action.

### *Bryan and Nancy Boprey (dba Balls and Strikes)*

108.    Upon information and belief, Defendants Bryan and Nancy Boprey ("Boprey Defendants") are, now and at all times relevant to the conduct at issue in this action, residents of the state of Wisconsin.

109.    Upon information and belief, the Boprey Defendants own and/or do business as Defendant Balls and Strikes.

110.    Upon information and belief, the Boprey Defendants are the founders and sole owners of Defendant Balls and Stikes and are responsible for the actions of Balls and Strikes, including all actions and conduct alleged herein.

111.    Upon information and belief, the Boprey Defendants operate a retail store at 707 York Street, Mantiowoc, Wisconsin.

112.    The Boprey Defendants also own and/or operate a website located at URL address http://www.ballsandstrikeswi.com/index.html.

113.    Upon information and belief, certain of the products and collectibles created, displayed, published, and sold by the Boprey Defendants include copies of Plaintiffs' photographs at issue in this action.

## JURISDICTION AND VENUE

114.    Jurisdiction for Plaintiffs' claims lies with the United States District Court for the Western District of Wisconsin pursuant to the Copyright Act of 1976, 17 U.S.C. §§ 101, *et seq.*, 28 U.S.C. § 1331 (conferring original jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States"), and 28 U.S.C. § 1338(a) (conferring original jurisdiction over claims arising under any act of Congress relating to copyrights).

115.    Venue is proper in this Court under 28 U.S.C. § 1391(b) since the alleged misconduct by Defendants giving rise to the claims asserted herein occurred in this District and 28 U.S.C. § 1400(b) since Defendants infringed Plaintiffs' copyrights in this District, and because all Defendants reside, may be found in, do business in, or infringed Plaintiffs' copyrights in this District.

## FACTUAL ALLEGATIONS

116.    Plaintiffs are professional photographers who make their living by taking and licensing photographs.

117.    Plaintiffs specialize in creating sports-related photography, including photographing NFL, NCAA, and MLB games.

118.    Plaintiffs own vast collections of photos created during games and events involving Wisconsin sports teams, including the University of Wisconsin Badgers, Milwaukee Brewers, and Green Bay Packers.

119.    Attached hereto as "EXHIBIT 1" is a chart identifying Plaintiffs' photographs at issue in this action.

120.    Plaintiffs' copyrights in and to the photographs that are the subject of this action have been registered with the United States Copyright Office.

121.     All of the photographs at issue in this action were created by Plaintiffs and they own all copyrights in and to the photographs.

122.    Plaintiffs previously made their works available for sale and licensing through Getty Images.

123.    Plaintiffs' relationship with Getty Images was governed by a contractual agreement (a so-called "contributor agreement") in which Plaintiffs authorized Getty Images, according to specified conditions and limitations, to sell licenses to their works to customers in exchange for Getty Images' paying a specified percentage of the license fees to Plaintiffs.

124.    Under their contributor agreements, Getty Images was required to report to Plaintiffs the sale of any licenses involving Plaintiffs' works and the royalties due to Plaintiffs.

125.    Getty Images never reported to Plaintiffs that it sold any licenses involving their photos to any of the Defendants in this action.

126.    Plaintiffs currently make their works available for licensing through the Associated Press ("AP").

127.    AP also is required to report to Plaintiffs the sale of any licenses involving Plaintiffs' works and the royalties due to Plaintiffs.

128.    AP has never reported to Plaintiffs that it granted any licenses involving their photos to any of the Defendants in this action.

129.    Plaintiffs have never granted a license or permission to use their photos to any of the Defendants in this action.

130.    Despite having never obtained a license or valid permission to use Plaintiffs' photos for any purpose, Defendants copied, published, displayed, distributed, creative derivative works using, and/or sold copies of Plaintiffs' photos for their own benefit and financial gain.

### *The Retail Defendants*

131.    As alleged above, Defendants Scheels; Svehla; Scott's Brewery Collectibles; Martin; Sports-4-Less; Scooter G; Scooter G Sports; Lovelace; 22 Promotions; Signature Sports; Wein; Beyond Studio; Winiecki; Cleary; Gameday Sports; The Vault; and the Boprey Defendants (collectively referred to hereinafter as the "Retail Defendants") own and/or operate (or in the case of Winiecki, owned and operated) retail stores and/or websites, including social media outlets, through which they sell (or sold) sports collectibles to customers, including but not limited to posters, prints, and canvases.

132.    The Retail Defendants created and/or sold canvases, prints, posters, and other sports memorabilia and products that included copies of Plaintiffs' photos.

133.    Because information regarding the full scope of the Retail Defendants' use of Plaintiffs' photos remains in the sole possession of each Retail Defendant, the full scope of each Retail Defendant's infringing activities has not yet been ascertained.

134.    Plaintiffs have been able to ascertain and obtain proof of certain infringements committed by the Retail Defendants by visiting their stores and websites.

135.    Attached hereto as EXHIBITS 2-9 are charts setting forth the currently available proof of the Retail Defendants' unlicensed and infringing uses of Plaintiffs' photos.

136.    Attached hereto as EXHIBIT 2 is chart setting forth the currently available proof of Defendant Scheels' unlicensed and infringing uses of photos to which Plaintiffs own all copyrights.

137.    Attached hereto as EXHIBIT 3 is chart setting forth the currently available proof of Defendants Svehla and Scott's Brewery Collectibles' unlicensed and infringing uses of numerous photos to which Plaintiffs own all copyrights.

138.    Attached hereto as EXHIBIT 4 is chart setting forth the currently available proof of Defendants Martin and Sports-4-Less' unlicensed and infringing uses of numerous photos to which Plaintiffs own all copyrights.

139.    Attached hereto as EXHIBIT 5 is chart setting forth the currently available proof of Defendants Scooter G and Scooter G Sports' unlicensed and infringing uses of numerous photos to which Plaintiffs own all copyrights.

140.    Attached hereto as EXHIBIT 6 is chart setting forth the currently available proof of Defendants Lovelace and 22 Promotions' unlicensed and infringing uses of a photo to which Plaintiffs own all copyrights.

141.    Attached hereto as EXHIBIT 7 is chart setting forth the currently available proof of Defendants Cleary and Gameday Sports' unlicensed and infringing uses of photos to which Plaintiffs own all copyrights.

142.    Attached hereto as EXHIBIT 8 is chart setting forth the currently available proof of Defendant The Vault's unlicensed and infringing uses of photos to which Plaintiffs own all copyrights.

143.    Attached hereto as EXHIBIT 9 is chart setting forth the currently available proof of the Boprey Defendants' unlicensed and infringing uses of photos to which Plaintiffs own all copyrights.

144.    The charts attached as EXHIBITS 2-9 include either screen captures from the Retail Defendants' websites or photographs taken at stores owned by the Retail Defendants.

145.    The charts attached as EXHIBITS 2-9 demonstrate that the Retail Defendants have used (and still are using) Plaintiffs' photos without permission in canvases, prints, and other products being sold in their stores or through their websites.

146.    EXHIBITS 1-9 are expressly incorporated herein by reference as if all information set forth therein was set forth fully herein.

147.    The unauthorized and infringing uses identified in EXHIBITS 2-9 are intended merely to demonstrate the currently known uses of Plaintiffs' photos by these Retail Defendants. EXHIBITS 2-9 thus are illustrative only, and are not intended to represent the full scope of the Retail Defendants' infringements.

148.    Upon information and belief, a reasonable opportunity for further investigation and discovery will yield evidence that the Retail Defendants' unauthorized, unlicensed, and/or infringing use and exploitation of Plaintiffs' images is not limited to the uses identified in EXHIBITS 2-9.

149.    The Retail Defendants did not purchase valid licenses to use Plaintiffs' photographs.

150.    The Retail Defendants did not have a license, authorization, or permission to use Plaintiffs' works to create posters, prints, canvases, or any other commercial products.

151.    The Retail Defendants did not have a license, authorization, or permission to copy, publish, display, sell, or create derivative works using copies of Plaintiffs' photos.

152.    The Retail Defendants did not have a license, authorization, or permission to distribute, transfer, or sell copies of Plaintiffs' works to third parties for any reason.

153.    Any and all uses of Plaintiffs' photographs by the Retail Defendants were unauthorized and infringing.

### *The Supply Defendants*

154.    Upon information and belief, Defendants Wredberg, AW Artworks, Wein, Beyond Studio, Winiecki[1], McVeigh, and George (hereinafter the "Supply Defendants") copied, distributed, and sold images copies of Plaintiffs' photos at issue in this action to other businesses and individuals knowing that those businesses and individuals intended to use those images to create sports collectibles and other retail products, including prints, posters, and canvases.

155.    Upon information and belief, the Supply Defendants copied, distributed, and sold images copies of Plaintiffs' photos at issue in this action to the other defendants in this action and to the defendants in *Boehm et al. v. Zimprich et al.*, Case No. 14-cv-0016 (W.D. Wisconsin) (the "*Zimprich* case"), including the Zimpriches and LOF.

156.    Upon information and belief, Defendant Wein and Beyond Studio also created or printed canvases using copies of Plaintiffs' photos for certain of the Retail Defendants as well as the defendants in the *Zimprich* case, including but not limited to LOF.

157.    Upon information and belief, each of the Supply Defendants copied, distributed, transferred, and/or sold copies of Plaintiffs' photos to third parties, including certain of the Retail Defendants in this action and certain defendants in the *Zimprich* case.

---

[1] Defendant Winiecki is identified as both a Supply and Retail Defendant because he previously operated a retail store, Classic Sports Originals, and subsequently supplied copies of Plaintiffs' photos to other retail businesses.

158.     Defendant George provided copies of Plaintiffs' photos to LOF and other third parties for free and outside of Getty Images' proper licensing channels, and did not track or report the distribution of Plaintiffs' photos to LOF and these third parties as a license.

159.     Defendant George provided copies of Plaintiffs' photos to LOF and third parties in exchange for gifts and other personal favors and benefits.

160.     Attached hereto as EXHIBIT 10 is a gallery of the images that, upon information and belief, Defendant George supplied to LOF without a license or permission and outside the normal licensing channels of Getty Images.

161.     At the time that the Supply Defendants provided copies of Plaintiffs' photos to the Retail Defendants and other third parties, they knew that they lacked permission or authorization to copy, license, sublicense, or sell copies of Plaintiffs' photos.

162.     At the time that they provided copies of Plaintiffs' photos to these third parties, the Supply Defendants knew or had reason to know that these parties intended to use Plaintiffs' photos to create posters, prints, canvases, and other commercial products without a license.

163.     Because information regarding the full scope of the Supply Defendants' use of Plaintiffs' photos remains in the sole possession of each Supply Defendant, the full scope of each Supply Defendant's infringing activities has not yet been ascertained.

## COUNT I
## COPYRIGHT INFRINGEMENT
## (AGAINST ALL DEFENDANTS)

164.    Plaintiffs repeat and re-allege each of the above allegations as if set forth fully herein.

165.    Plaintiffs created and own all copyrights in and to the creative works identified herein and in all exhibits hereto.

166.    Because information regarding the full scope of the Defendants' infringements remains in the sole possession of each Defendant, Plaintiffs assert claims against all Defendants for all photos identified in EXHIBITS 1-10 herein, and all photos identified in EXHIBITS 1-10 are the subject of this action.

167.    Plaintiffs' copyrights in and to photographs in EXHIBITS 1-10 that are all at issue in this action have been registered with the United States Copyright Office

168.    Plaintiffs allege, upon information and belief, that the photographs identified in EXHIBITS 1-10 have been copied, published, distributed, sold, and/or otherwise used or exploited without permission or authorization by Defendants.

169.    Defendants infringed Plaintiffs' copyrights by copying, publishing, distributing, selling (or offering for sale) copies of, and/or otherwise using Plaintiffs' copyrighted creative works without a license or permission as set forth more fully above.

170.    Defendants' unauthorized use of Plaintiffs' copyrighted work was willful, intentional, and/or reckless.

171.    Plaintiffs seek all damages recoverable under the Copyright Act, including statutory or actual damages, including Defendants' profits attributable to the infringements. Plaintiffs also seek all attorneys' fees and any other costs incurred in litigating this matter.

## COUNT II
## CONTRIBUTORY COPYRIGHT INFRINGEMENT
## (AGAINST ALL DEFENDANTS)

172.     Plaintiffs repeat and re-allege each allegation set forth above as if set forth fully herein.

173.     Defendants provided or sold copies of Plaintiffs' photos to various third parties, including other defendants in this action and defendants in the *Zimprich* case, who directly infringed Plaintiffs' copyrights as set forth herein in and in the pleadings and rulings in the *Zimprich* case.

174.     At the time that they provided copies of Plaintiffs' photos to these third parties, Defendants knew or had reason to know that these parties intended to use Plaintiffs' photos to create posters, prints, canvases, and other commercial products without a license.

175.     Defendants thus knowingly caused, enabled, and/or materially contributed to the unauthorized and infringing uses of Plaintiffs' photos.

176.     Defendants were not authorized to copy, distribute, use, license, sublicense, transfer, or sell copies of Plaintiffs' photos or products that included copies of Plaintiffs' photos.

177.     Defendants intentionally induced, materially contributed to, and otherwise facilitated the directly infringing acts carried out by the other defendants in this action and the infringements at issue in the *Zimprich* case.

178.     Defendants were aware, or should have been aware, that the subsequent use of Plaintiffs' photos in commercial products was unlicensed and unauthorized.

179.     Defendants actions alleged herein were willful, knowing, intentional, and/or reckless.

180.     Plaintiffs seek all damages recoverable under the Copyright Act, including statutory or actual damages, including Defendants' profits attributable to the infringements, and damages suffered as a result of the lack of compensation, credit, and attribution and from any diminution in the value of Plaintiffs' copyrighted works.  Plaintiffs also seek all attorneys' fees and any other costs incurred in pursuing and litigating this matter.

### COUNT III
### VICARIOUS COPYRIGHT INFRINGEMENT
### (AGAINST ALL DEFENDANTS)

181.     Plaintiffs repeat and re-allege each allegation set forth above as if set forth fully herein.

182.     Defendants provided or sold copies of Plaintiffs' photos to various third parties, including other defendants in this action and defendants in the *Zimprich* case, who directly infringed Plaintiffs' copyrights as set forth herein in and in the pleadings and rulings in the *Zimprich* case.

183.     At the time that they provided copies of Plaintiffs' photos to these third parties, Defendants knew or had reason to know that these parties intended to use Plaintiffs' photos to create posters, prints, canvases, and other commercial products without a license.

184.     Defendants thus knowingly caused, enabled, and/or materially contributed to the unauthorized and infringing uses of Plaintiffs' photos.

185.     Defendants intentionally induced, materially contributed to, and otherwise facilitated the directly infringing acts carried out by the other defendants in this action and the infringements at issue in the *Zimprich* case.

186.    Defendants were aware, or should have been aware, that the subsequent use of Plaintiffs' photos in commercial products was unlicensed and unauthorized.

187.    Defendants had the right and practical ability to control the subsequent infringing uses of Plaintiffs' photos, including by not providing copies of or access to Plaintiffs' photos to third parties.

188.    Defendants actions alleged herein were willful, knowing, intentional, and/or reckless.

189.    Plaintiffs seek all damages recoverable under the Copyright Act, including statutory or actual damages, including Defendants' profits attributable to the infringements, and damages suffered as a result of the lack of compensation, credit, and attribution and from any diminution in the value of Plaintiffs' copyrighted works.  Plaintiffs also seek all attorneys' fees and any other costs incurred in pursuing and litigating this matter.

**WHEREFORE,** Plaintiffs respectfully pray for judgment on their behalf and for the following relief:

1.    A jury trial on all issues so triable;

2.    A preliminary and permanent injunction against Defendants from copying, displaying, distributing, advertising, promoting, and/or selling any publications or materials that include Plaintiffs' works identified herein, and requiring Defendants to deliver to the Court for destruction or other appropriate disposition all relevant materials, including digital files of Plaintiffs' photographs and all copies of the infringing materials described in this complaint that are in the control or possession or custody of Defendants;

3.    All allowable damages under the Copyright Act, including, but not limited to, statutory or actual damages, including damages incurred as a result of Plaintiffs' loss of licensing

revenue and Defendants' profits attributable to infringement, and damages suffered as a result of the lack of credit and attribution;

4.      All allowable damages caused by and/or resulting from Defendants' violation and infringement of Plaintiffs' moral rights in and to these creative visual works;

5.      Plaintiffs' full costs, including litigation expenses, expert witness fees, interest, and any other amounts authorized under law, and attorneys' fees incurred in pursuing and litigating this matter;

6.      Any other relief authorized by law, including punitive and/or exemplary damages; and

7.      For such other and further relief as the Court deems just and proper.

**<u>JURY TRIAL DEMANDED</u>**
Dated June 19, 2015

Respectfully submitted,

NELSON & McCULLOCH LLP

By:

Kevin P. McCulloch
Nate Kleinman (to be admitted *pro hac vice*)
155 East 56th Street
New York, New York 10022
T: (212) 355-6050
F: (646) 308-1178
kevin@nmiplaw.com

*Attorneys for Plaintiffs*