IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SCOTT BOEHM and DAVID STLUKA,

                      Plaintiffs,

  v.

SCHEELS ALL SPORTS, INC., *et al.*,

                      Defendants,

STATE FARM FIRE AND CASUALTY COMPANY,

                      Intervenor,

GRINNELL MUTUAL REINSURANCE COMPANY,

                      Intervenor,

SOCIETY INSURANCE, A MUTUAL COMPANY,

                      Intervenor.

OPINION & ORDER

15-cv-379-jdp

---

      Plaintiffs are sports photographers who accuse defendants, mostly sports memorabilia dealers, of making and selling unauthorized reproductions of their work. Some defendants have business insurance policies that may cover "advertising injury," so those defendants tendered this case to their insurers, who intervened to contest coverage. Three of those insurers now move for summary judgment that their policies do not afford coverage for plaintiffs' claims.

      A basic business insurance policy will often include coverage for what is called "advertising injury." In general terms, advertising injury covers claims that the insured has violated another's intellectual property rights in the insured's advertising. It does not, however, provide coverage for claims of intellectual property infringement generally.

Publishers and others in the media industries who want broader protection against claims of copyright infringement can get a policy with "media perils" coverage, but none of the defendants here had that type of insurance. So the primary questions here are first, whether each insured actually had advertising injury coverage, and if so, whether the complaint alleges that copyright infringement occurred in the insured's advertisement.

The court will grant the motion by State Farm Fire and Casualty Company, Dkt. 280,[1] because the State Farm policy issued to Event USA Corp. includes an endorsement that expressly excludes advertising injury coverage. The court will grant the motion by Grinnell Mutual Reinsurance Company, Dkt. 285, because plaintiffs not allege any infringement in an advertisement by Grinnell's insureds, AW Artworks and Andrew Wredberg. The court will grant the motion by Society Insurance, A Mutual Company, Dkt. 305, because the alleged infringement that its insured, Nicholas Martin, d/b/a Sports-4-Less, committed in his listings on Amazon were published *before* the Society policy took effect.

ANALYSIS

**A. Summary judgment standard**

Summary judgment is appropriate if the intervenors show "that there is no genuine dispute as to any material fact and [each] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty*

---

[1] The court will construe State Farm's motion for declaratory judgment as one for summary judgment, *see Kam-Ko Bio-Pharm Trading Co. Ltd-Australasia v. Mayne Pharma (USA) Inc.*, 560 F.3d 935, 943 (9th Cir. 2009).

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). To avoid summary judgment, defendants "must set forth specific facts showing that there is a genuine issue for trial." *Id.*

The determination of insurance coverage questions is commonly amenable to resolution on summary judgment, because it depends on comparison of the allegations in the complaint to the terms of the policy.

**B. Basic legal principles concerning insurance coverage**

Insurance coverage disputes are governed by well-known principles of state law. If even one claim in the complaint falls within the coverage afforded by the policy, the insurers must defend the policy holders against the entire suit. *Wilson Mut. Ins. Co. v. Falk*, 2014 WI 136, ¶ 69, 360 Wis. 2d 67, 857 N.W.2d 156. To determine whether the intervenors have a duty to defend, the court compares the allegations of the complaint to the terms of the policy. *Estate of Sustache v. Am. Family Mut. Ins. Co.*, 2008 WI 87, ¶ 20, 311 Wis. 2d 548, 751 N.W.2d 845. Under Wisconsin law,[2] the process has three steps. *Am. Family Mut. Ins. Co. v. Am. Girl, Inc.*, 2004 WI 2, ¶ 24, 268 Wis. 2d 16, 673 N.W.2d 65. First, the court determines whether the policy makes an initial grant of coverage. Second, the court considers whether there are exclusions that would preclude coverage of the particular claim at issue. And third, the court considers whether the applicable exclusions are subject to exceptions that would afford coverage after all.

If there is even arguable—as opposed to actual—coverage, then the intervenors must defend defendants. *Gen. Cas. Co. of Wis. v. Hills*, 209 Wis. 2d 167, 561 N.W.2d 718, 722

---

[2] Wisconsin law governs the question of insurance coverage for defendants Event USA, AW Artworks, and Wredberg. *Charter Oak Fire Ins. Co. v. Hedeen & Co.*, 280 F.3d 730, 735 (7th Cir. 2002). Illinois law governs Martin's policy. Dkt. 306, at 11. Neither party has pointed to any difference between the law of Illinois and the law of Wisconsin that would be material to an issue raised here.

n.11 (1997). "Generally, the duty to defend is broader than the duty to indemnify," which means that the insurer will have a duty to defend a case, even if the allegations may be "groundless, false, or fraudulent." *Johnson Controls*, 2010 WI 52, ¶¶ 29, 83 (quotation marks and citations omitted).

The interpretation of the insurance contract is a question of law. *Phillips v. Parmelee*, 2013 WI 105, ¶ 11, 351 Wis. 2d 758, 840 N.W.2d 713.[3] The purpose of policy interpretation is "to give effect to the intent of the parties," using the policy language's "plain and ordinary meaning, as understood by a reasonable person in the position of the insured." *Id.* ¶ 12. When the policy language is unambiguous, the policy is enforced as written, "without resorting to the rules of construction or principles from case law." *Johnson Controls, Inc. v. London Mkt.*, 2010 WI 52, ¶ 26, 325 Wis. 2d 176, 784 N.W.2d 579. "[I]f the language of a policy is ambiguous, susceptible of more than one reasonable interpretation, [the Wisconsin courts] will construe it narrowly, against the insurer, and in favor of coverage." *Liebovich v. Minn. Ins. Co.*, 2008 WI 75, ¶ 18, 310 Wis. 2d 751, 751 N.W.2d 764.

With these principles in mind, the court turns to each motion for summary judgment. The court starts with Grinnell's motion, because it presents typical advertising injury provisions.

**C. Grinnell Mutual (insureds: AW Artworks and Andrew Wredberg)**

Grinnell Mutual issued AW Artworks and Wredberg a Businessowners Sure-All Plus Policy, covering October 3, 2011 to October 3, 2012. Dkt. 287-1. Both defendants are insured under the policy.

---

[3]

The Grinnell policy confers coverage for "personal and advertising injury," and the scope of that coverage is circumscribed by definitions in the policy. The initial grant of coverage provides:

> b. This insurance applies:
>
> . . .
>
> (2) To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory."

Dkt. 287-1. The policy provides a definition of "personal and advertising injury." That definition provides, in pertinent part:

> 14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:
>
> . . .
>
> f. The use of another's advertising idea in your "advertisement"; or
>
> g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

*Id*. The policy also defines "advertisement":

> 1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:
>
> a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and
>
> b. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

5

*Id*.

The Grinnell policy also has exclusions applicable to advertising injury. The exclusions, in pertinent part, provide:

> B. Exclusions
>
> 1. Applicable To Business Liability Coverage
>
> This insurance does not apply to:
>
>> p. Personal And Advertising Injury
>>
>> "Personal and advertising injury":
>>
>> (3) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;
>>
>> (13) Arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.
>>
>> However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

*Id*.

To put these provisions in plain English, the policy provides coverage for advertising injury. But advertising injury does not include claims for copyright infringement generally. Claims of copyright infringement are covered only if the infringement occurs in the insured's advertisement. Grinnell contends that plaintiffs have alleged copyright infringement generally, but they have not alleged any infringement *in an advertisement* by AW Artworks or Wredberg. Plaintiffs argue that the complaint expressly alleges infringement in advertising, citing paragraph 84 of the first amended complaint.[4] Dkt. 311, at 3.

---

[4] Grinnell, reserving its rights to contest coverage, provided AW Artworks and Wredberg with counsel only on the merits of the case; they are unrepresented on the coverage issue, *see* Dkt. 279, and they have not opposed Grinnell's motion. Plaintiffs, however, are motivated to trigger coverage and they have opposed Grinnell's motion. Dkt. 311.

Plaintiffs allege that AW Artworks and Wredberg "copied, *advertised*, displayed, published, and sold copies of photographs for various Wisconsin sports teams, including the University of Wisconsin Badgers, Milwaukee Brewers, and Green Bay Packers." Dkt. 63, ¶ 84 (emphasis added). They also allege that AW Artworks and Wredberg "copied, distributed, and sold copies of *Plaintiffs' photos at issue in this action*." *Id.* ¶ 85 (emphasis added). But plaintiffs do not accuse AW Artworks and Wredberg of using *plaintiffs'* photographs in their advertising. The first amended complaint attaches charts showing the various acts of infringement that plaintiffs had discovered. Dkt. 63, Exs. 2-12. In some cases, these charts show online listings in which plaintiffs' photographs are displayed. *See, e.g.,* Dkt. 63-4 (the Sports-4-Less chart, discussed in connection with Society's motion). But there is no chart for AW Artworks and Wredberg. Thus, the only mention of "advertising" in connection with AW Artworks and Wredberg is the statement in paragraph 84 that these defendants advertised photos of Wisconsin sports teams.

Plaintiffs have not alleged that AW Artworks and Wredberg advertised infringing photographs, although even that would not be sufficient to trigger coverage. Plaintiffs would have to allege that the advertisement itself is infringing, which means that plaintiffs would have to allege that AW Artworks and Wredberg included an infringing photograph in their advertisement. They have simply not alleged this against AW Artworks and Wredberg (although they have made this allegation against others).

Plaintiffs also argue that they have pleaded that all defendants, including AW Artworks and Wredberg, are indirect infringers because they have sold copies of plaintiffs' photographs to others, knowing that it would lead to further acts of infringement. Dkt. 311, at 4. Thus, plaintiffs argue, AW Artworks and Wredberg are liable for all acts of infringement

7

alleged in the complaint, include some allegations of infringements in advertising. This argument is frivolous. In the sections of the complaint dealing with indirect infringement, Dkt. 63, ¶¶ 192-209, there is no allegation that AW Artworks and Wredberg are indirectly liable for any act of infringement that occurred in any advertisement. But more important, the Grinnell policy affords advertising injury coverage only for "infringement, in *your* 'advertisement,' of copyright, trade dress or slogan." Dkt. 287-1, at 46 (emphasis added). The Grinnell policy does not provide coverage for infringements that occur in the advertising of those to whom AW Artworks and Wredberg might sell an infringing product.

Grinnell also contends that if there were coverage under its policy, that coverage would be limited to infringements occurring within the policy period, October 3, 2011, to October 2, 2012. Grinnell is correct, but the point is academic: its policy does not cover the allegations in the first amended complaint. Grinnell Mutual is entitled to summary judgment that it does not owe a duty to defend or indemnify AW Artworks and Wredberg.

### D. State Farm (insured: Event USA)

State Farm issued two policies to Event USA: a Businessowners Policy, numbered 99-EG-5528-5, and a Commercial Liability Umbrella Policy, numbered 99-EG-8229-3. *See* Dkt. 284-1 and Dkt. 284-2. In the ways that matter for present purposes, both policies provide identical coverage. State Farm contends that both policies expressly exclude coverage for advertising injury. State Farm is correct.

Both policies use standard policy forms that include provisions that relate to advertising injury. The advertising injury provisions are substantially similar to the provisions in the Grinnell policy, which means that they would cover claims of copyright infringement only if the infringement occurred in Event USA's advertisement. But there is a critical

8

difference with the Grinnell policy: the State Farm policies include endorsements that expressly exclude *all* advertising injury coverage.

> The endorsement for the Businessowners Policy provides:
>
> CMP-4721 EXCLUSION – PERSONAL AND ADVERTISING INJURY
>
> This endorsement modifies insurance provided under the following: BUSINESSOWNERS COVERAGE FORM
>
> The following is added to SECTION II – LIABILITY and supersedes any provision to the contrary: The insurance provided under SECTION II – LIABILITY does not apply to "personal and advertising injury."

Dkt. 284-1. The umbrella policy has a nearly identical endorsement. Dkt. 284-2. Thus, by their terms, the State Farm policies do not afford advertising injury coverage.

Event USA contends that the endorsements should be disregarded, because it had a reasonable expectation that it would have coverage for all of its business activities. Dkt. 344, at 10-11. According to Dennis Garrity, Event USA's president, he was assured by his insurance agent that Event USA had policies that would "cover all activities of our business" and Garrity "completely relied on that representation." Dkt. 347, ¶ 7. Event USA argues that "[u]nder the doctrine of reasonable expectations, courts often grant coverage to an insured even when the express language of the policy does not provide coverage." Dkt. 344, at 10. Event USA's argument is not well developed: it is not clear whether Event USA is arguing for an interpretation of the policy language, or contending that the insurance agent undertook to provide coverage that he did not really deliver. Either way, Event USA's argument fails.

There is nothing ambiguous about the endorsements; when the policy is unambiguous, the court's duty is to enforce its terms. *Johnson Controls*, 2010 WI 52, ¶ 26. The

9

principle that a court will interpret an insurance contract according to the reasonable expectations of the insured has no bearing when the contract simply and clearly excludes coverage. *State Farm Mut. Auto. Ins. Co. v. Langridge*, 2004 WI 113, ¶ 14, 275 Wis. 2d 35, 683 N.W.2d 75 ("[W]e give the *words* in the insurance policy their common and ordinary meaning, that is, the meaning a reasonable person in the position of the insured *would have understood the words to mean*." (emphasis added)).

Event USA's argument that it "completely relied" on its insurance agent is a claim for reformation of the insurance contract. To establish its entitlement to reformation, Event USA would have to prove that it made statements to the agent requesting the coverage desired, and that the agent failed to deliver what the insured asked for. *Sprangers v. Greatway Ins. Co.*, 175 Wis. 2d 60, 498 N.W.2d 858, 863 (Ct. App. 1993), *aff'd*, 182 Wis. 2d 521, 514 N.W.2d 1 (1994). "[A]bsent special circumstances, an insurer has no duty to anticipate what liabilities an insured may expect a policy to cover or to identify which exclusions in a policy an insured may deem important." *Sprangers v. Greatway Ins. Co.*, 182 Wis. 2d 521, 514 N.W.2d 1, 11 (1994). Event USA has not shown that it made any statement to its agent requesting specific coverage, and it was not entitled to "completely rely" on its agent to get coverage for all its business operations.

Event USA also contends that State Farm has a duty to defend it under additional earlier policies that State Farm has yet to produce in discovery. But State Farm has responded with affidavit evidence suggesting that all of the State Farm policies had the same provisions. Dkt. 355. By now, Event USA should have the additional policies, but it has not challenged State Farm's evidence that the policies are all the same.

The court need not reach the question of whether plaintiffs have alleged that Event USA infringed their copyrights in Event USA's advertising, because the State Farm policies do not cover advertising injury. State Farm's motion will be granted.

### E. Society Insurance (insured: Nicholas Martin, d/b/a Sports-4-Less)

Society Insurance insured Martin under business liability policy, BOP 588051, effective January 7, 2015 to January 7, 2016. Dkt. 308-5. The policy provides coverage for "personal and advertising injury," with provisions and definitions substantially identical to those in the Grinnell policy. Society contends that its policy does not afford coverage to Martin for three reasons: (1) the complaint does not allege infringement in Martin's advertising; (2) the policy excludes coverage for intentional wrongdoing, which is what the complaint alleges; and (3) the prior publication exclusion applies because infringement began before the coverage period.

Society contends that the complaint does not allege any infringing advertising activity. Society's policy is governed by Illinois law,[5] so it cites Illinois cases holding that advertising an infringing product is not an advertising injury. *See, e.g., Winklevoss Consultants, Inc. v. Fed. Ins. Co.*, 991 F. Supp. 1024, 1034 (N.D. Ill. 1998). Society contends that this is all the complaint alleges: that Martin sold and displayed infringing products. "Notably, Plaintiffs do not allege any infringing activity by Sports-4-Less in any advertisement." Dkt. 306, at 17.

But Society has ignored the exhibit attached to the complaint that shows Sports-4-Less's infringing activity. Dkt. 63-4. That chart shows five of plaintiffs' photographs that are displayed as part of listings on Amazon.com. In its reply brief, Society contends that Amazon

---

[5] Although Society understandably points to Illinois cases, neither side has suggested that Illinois law of insurance coverage is different from Wisconsin's in any material way.

listings are not "advertising" within the meaning of the policy. Society contends that an Amazon listing does not convey an independent message about the product; it is merely the equivalent of putting the product on display on a shelf in Sports-4-Less's store.

Society uses a cramped definition of "advertising" that does not square with the policy language. In the policy, advertising is a notice that is published to either the general public, or to a specific market segment, about the insured's goods, made for the purpose of attracting customers. Dkt. 308-5. And further:

> Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered advertisement.

*Id*. Nothing in the definition of advertisement in the policy requires that an advertisement make some independent statement about the product other than, "here is a product offered for sale." And this is obviously different from displaying a product in a store because an advertisement must be broadcast or published. Society presents no authority or sound argument that an Amazon listing is not an advertisement. If an infringing copy of one of plaintiffs' photographs were included in the Amazon listing, that would constitute "Infringing upon another's copyright . . . in your 'advertisement.'"

The second reason Society gives to deny coverage is an exclusion for intentional acts. In the Society policy, that exclusion applies to any claim of "personal and advertising injury":

> (1) Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."

Dkt. 308-5. The complaint alleges that the infringement by all defendants, including Martin, was "willful, intentional, and/or reckless." Dkt. 63, ¶ 109. Society argues that the complaint thus alleges knowing conduct that necessarily falls within the intentional acts exclusion.

Society relies on a single case, *Del Monte Fresh Produce N.A., Inc. v. Transportation Insurance Co.*, 500 F.3d 640 (7th Cir. 2007). In that case, the Seventh Circuit held that the intentional acts exclusion applied because none of plaintiffs' claims could be construed to allege negligent conduct; each involved the "paradigm of intentional conduct." *Id*. at 645. But that is not the case here. Plaintiffs include a blanket allegation of willfulness, which is commonplace in copyright infringement litigation. However, plaintiffs do not make the pointed allegations of intentional conduct like the ones that supported the exclusion in *Del Monte.* Society has given the court no reason to depart from its decision in a related case, *Boehm v. Zimprich*, 68 F. Supp. 3d 969 (W.D. Wis. 2014), in which the court held that a similar complaint included allegations of non-willful infringement, and that the intentional acts exclusion did not apply.

The third reason Society gives to deny coverage is an exclusion for prior publication. In Society's policy, that exclusion applies to any claim of "personal and advertising injury":

> (3) Arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

Dkt. 308-5. Society contends that Martin's offending Amazon listings were posted in 2011 and 2012, well before the policy period, which began in 2015.

Society's invocation of the prior publication exclusion raises a preliminary issue: plaintiffs do not allege in the amended complaint exactly when Martin posted the Amazon listings. Society garnered that information from Martin's discovery responses. Dkt. 308-4. Under Illinois law, the court may consider such extrinsic evidence in evaluating an insurer's motion for a declaratory judgment that it has no duty to defend, so long as the evidence does not touch on an issue crucial to the underlying merits. *Fid. & Cas. Co. of N.Y. v. Envirodyne Eng'rs, Inc.*, 122 Ill. App. 3d 301, 461 N.E.2d 471, 473 (1983). The court sees no way that

13

the interrogatories go to a crucial issue in the case, and Martin does not challenge Society's use of the interrogatory responses. Accordingly, the court considers Society to have established, for purposes of its motion, that Martin posted the offending Amazon listings in 2011 or 2012, well before the policy period.

The Seventh Circuit addressed the prior publication exclusion to advertising injury coverage in *Capitol Indemnity Corp. v. Elston Self Service Wholesale Groceries, Inc.*, 559 F.3d 616 (7th Cir. 2009), which in turn relies on *Taco Bell Corporation v. Continental Casualty Company*, 388 F.3d 1069 (7th Cir. 2004). *Capitol Indemnity* provides a succinct analysis:

> We understand the term "material" in the exclusion to refer to "injurious" material. By its terms, the prior publication exclusion abrogates the insurer's duty to defend only where it can prove that the insured's prior publication of the same actionable, injurious material alleged in the underlying complaint occurred prior to the beginning of its policy. This interpretation is logical because the exclusion exists to prevent an insured from purchasing an insurance policy to cover liability for illegal acts which it had undertaken prior to purchasing the policy. Put another way, the purpose of the exclusion is to prevent an individual who has caused an injury from buying insurance so that he can continue his injurious behavior.
>
> We do not see any ambiguity in the meaning of the exclusion; it seems clear that the exclusion only abrogates the duty to defend where the insured's first publication of actionable material occurred prior to the beginning of its policy.

559 F.3d at 620. The "injurious material" here is the Amazon listings that reproduce the plaintiffs' photographs. Martin concedes in his interrogatory responses that the offending listings were posted before the policy period. The prior publication exclusion thus applies.

Martin invites the court to follow the reasoning of some courts outside the Seventh Circuit that have held that the prior publication exclusion applies only to claims involving libel, slander, and invasion of privacy. *See, e.g., Irons Home Builders, Inc. v. Auto-Owners Ins. Co.*,

839 F. Supp. 1260 (E.D. Mich. 1993). The conclusions reached in these cases are reasonable, though not irresistible. But they cannot be squared with *Taco Bell*, which uses copyright infringement as the prototypical example of an advertising injury that could be subject to the prior publication exclusion. 388 F.3d at 1072. Accordingly, the court will grant Society's motion.

ORDER

IT IS ORDERED that:

1. Intervenor State Farm Fire and Casualty Company's motion for declaratory judgment, Dkt. 280, is GRANTED.

2. Intervenor Grinnell Mutual Reinsurance Company's motion for summary judgment, Dkt. 285, is GRANTED.

3. Intervenor Society Insurance, a Mutual Company's motion for summary judgment, Dkt. 305, is GRANTED.

Entered August 17, 2016.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge