IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SCOTT BOEHM and DAVID STLUKA,

                        Plaintiffs,

     v.

SCOTT SVEHLA, *et al.*,

                        Defendants.

**OPINION & ORDER**

15-cv-379-jdp

---

Plaintiffs Scott Boehm and David Stluka are professional sports photographers. In this copyright infringement suit, they allege that defendants copied, printed, displayed, and sold plaintiffs' photos without authorization. Most of the defendants admit that their use of plaintiffs' photographs would infringe plaintiffs' copyrights. The main questions here concern the extent of infringement and thus damages, and in some cases, whether plaintiffs' claims have been released or are otherwise barred.

Now before the court are several motions for partial summary judgment. Plaintiffs move for summary judgment that defendants willfully infringed plaintiffs' copyright in specific photos, but they also contend that they might bring additional claims of infringement to trial. Defendants move for summary judgment that a finding of infringement is precluded by a number of affirmative defenses and that their infringement, if any, was not willful. Some defendants also move for summary judgment that they did not infringe plaintiffs' copyright, directly or indirectly. The court will grant in part and deny in part each motion. The court will also identify a range of issues that are not resolved by the parties' summary judgment motion but that the court intends to resolve as a matter of law before trial.

The following facts are material and, except where noted, undisputed. Plaintiffs object to many of defendants' proposed facts as relying on "the self-serving declaration of an interested party." Plaintiffs' objection is frivolous: a party's own affidavit can support or oppose a dispositive motion "as long as it otherwise contains information that would be admissible if he were testifying directly." *Rooni v. Biser*, 742 F.3d 737, 740 (7th Cir. 2014). When plaintiffs make no other objection, the court will accept the proposed fact as undisputed without further note. Most of the details of the infringement at issue in this suit will be set out in the analysis section. The court begins with the general background on plaintiffs' other copyright infringement suits and their relationship to defendants.

Plaintiffs brought suit against Dan and Ciara Zimprich and Legends of the Field, among others, in *Boehm v. Zimprich* (*Boehm I*), No. 14-cv-16 (W.D. Wis. filed Jan. 9, 2014), *transferred from* No. 13-cv-1031 (S.D.N.Y. filed Feb. 14, 2013). The Zimprichs own "On 2 the Field," a sports memorabilia vendor with a store in Madison. The Zimprichs made and sold prints and photo canvases of dozens of plaintiffs' photographs without authorization. They provided reproductions of plaintiffs' photographs and digital copies of plaintiffs' photographs to defendants in this suit. Legends sells sports memorabilia through its retail stores. Like the Zimprichs, Legends provided reproductions of plaintiffs' photographs and digital copies of plaintiffs' photographs to defendants in this suit.

In *Boehm I*, plaintiffs alleged that Legends created or sold reproductions of plaintiffs' photographs without authorization. *Boehm I*, No. 14-cv-16, Dkt. 33. Plaintiffs alleged that the Zimprichs used plaintiffs' photographs without authorization to create sports memorabilia products and to promote their business through advertising. Plaintiffs alleged that the

Zimpriches provided infringing products to Legends and to other defendants in *Boehm I*. The court granted plaintiffs' motion for partial summary judgment, concluding plaintiffs were entitled to judgment of infringement against Legends and the Zimpriches. Before the court could resolve the remaining damages issues in that case, plaintiffs entered into settlement agreements with Legends and the Zimpriches and released their claims against Legends and the Zimpriches. *See* Dkt. 373-2 and Dkt. 373-3. The parties stipulated to dismiss plaintiffs' claims against Legends and the Zimpriches with prejudice on January 16, 2015. *Boehm I*, No. 14-cv-16, Dkt. 174 and Dkt. 176.

Five months later, plaintiffs filed this suit, which the court will refer to as *Boehm II*. Plaintiffs assert copyright infringement claims against a number of defendants, alleging that defendants directly infringed plaintiffs' copyrights and contributed to the direct infringement by the Zimpriches and Legends at issue in *Boehm I*. Dkt. 63. The defendants fall into two groups: retail defendants who sell sports prints, posters, canvases, and other memorabilia online and in retail stores; and supply defendants who distribute sports memorabilia wholesale to retail merchants and often create the prints, canvases, and other memorabilia in question. The retail defendants are: Event USA; Nicholas Martin (who does business as defendant Sports-4-Less); Scott's Brewery Collectibles, LLC, (SBC) and its owner, Scott Svehla; and Scooter G Sports and its owner, Scott Gonnering. The supply defendants are: Jerry Miller (who does business as Signature Sports); AW Artworks LLC and its owner, Andrew Wredberg; David Thomason (who does business as Fan4Ever); and Beyond Studio Publishing LLC and its owner, Luke Wein. The facts related to each defendant's individual acts of infringement are set out in the analysis section.

While this case was pending, plaintiffs filed a new suit against the Zimpriches and Legends: *Boehm v. Legends of the Field, LLC*, No. 15-cv-683 (W.D. Wis. filed Oct. 23, 2015), which the court will refer to as *Boehm III*. In *Boehm III*, plaintiffs allege that the Zimpriches and Legends breached the *Boehm I* settlement agreements and engaged in new infringing acts, including contributing to the *Boehm II* defendants' direct infringement of plaintiffs' photos. *Boehm III*, No. 15-cv-683, Dkt. 30. Litigation continues in *Boehm III*.

This case arises under federal law, the Copyright Act of 1976, 17 U.S.C. § 101, *et seq.*, so the court has subject matter jurisdiction on the basis of a federal question under 28 U.S.C. §§ 1331 and 1338(a).

## ANALYSIS

Several defendants advance affirmative defenses based on the effect of the *Boehm I* settlement agreement, so the court will address these defenses first. The court will then turn to the cross-motions for summary judgment as to each defendant's individual acts of infringement.

Summary judgment is appropriate if a moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When, as here, the parties have filed cross-motions for summary judgment, the court "look[s] to the burden of proof that each party would bear on an issue of trial; [and] then require[s] that party to go beyond the pleadings and affirmatively to establish a genuine issue of material fact." *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461

(7th Cir. 1997). If either party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment against that party is appropriate. *Mid Am. Title Co. v. Kirk*, 59 F.3d 719, 721 (7th Cir. 1995) (quoting *Tatalovich v. City of Superior*, 904 F.2d 1135, 1139 (7th Cir. 1990)). "As with any summary judgment motion, this [c]ourt reviews these cross-motions 'construing all facts, and drawing all reasonable inferences from those facts, in favor of . . . the non-moving party.'" *Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 756 (7th Cir. 2008) (quoting *Auto. Mechs. Local 701 Welfare & Pension Funds v. Vanguard Car Rental USA, Inc.*, 502 F.3d 740, 748 (7th Cir. 2007)).

## A. Viability of plaintiffs' claims after settlement of *Boehm I*

Several defendants contend that plaintiffs' claims are no longer viable after the settlement of *Boehm I*, which led to the dismissal of that case with prejudice. These defendants say that they got the infringing images from the Zimpriches or Legends, and they contend that they are entitled to the benefit of the release granted in the settlement agreements or that claim preclusion bars plaintiffs' claims against them.

These affirmative defenses were not asserted in their original responsive pleadings, so Event USA, Thomason, Svehla, Martin, Miller, Wredberg, and AW move to amend their pleadings to include them. Dkt. 368; Dkt. 379; Dkt. 386; Dkt. 401; Dkt. 402; Dkt. 486. Leave to amend should be freely granted when justice so requires. Fed. R. Civ. P. 15(a)(2). Plaintiffs oppose the motions as untimely and futile. Dkt. 381; Dkt. 383; Dkt. 409. The court sees no undue delay, because the defenses were asserted within a reasonable time after defendants got copies of the settlement agreements in *Boehm I*. The court will grant the motions to amend,

allowing defendants to assert these defenses, and decide them on the merits, thus addressing the question of futility.

The court starts with some general principles. Parties who act in concert to produce a single harm are joint tortfeasors. *See Paroline v. United States*, 134 S. Ct. 1710, 1741 (2014) (Sotomayor, J., dissenting); *Restatement (Second) of Torts* § 875 (Am. Law Inst. 1965). Joint tortfeasors are jointly and severally liable to the plaintiff for compensatory damages. *Minix v. Canarecci*, 597 F.3d 824, 829–30 (7th Cir. 2010). A joint tortfeasor is not an indispensable party, which means that a plaintiff does not have to bring suit against all tortfeasors in one action. *See, e.g., Salton Inc. v. Philips Domestic Appliances & Personal Care B.V.*, 391 F.3d 871, 877 (7th Cir. 2004). Under common law, a settlement with one joint tortfeasor would preclude subsequent suits against the others, but this "one satisfaction" rule has long been abrogated. *See United States v. Reliable Transfer Co.*, 421 U.S. 397, 408–09 (1975). But the abrogation of the one-satisfaction rule does not mean that a plaintiff may seek multiple full recoveries from each joint tortfeasor. "It is generally agreed that when a plaintiff settles with one of several joint tortfeasors, the nonsettling defendants are entitled to a credit for that settlement." *McDermott, Inc. v. AmClyde*, 511 U.S. 202, 208 (1994). These principles, taken together, give a plaintiff considerable flexibility in deciding whom to sue, in what order, and whether to do so in separate lawsuits. But other principles can limit that flexibility under certain circumstances.

In this case, the defendants who got their unauthorized copies of plaintiffs' photos from the Zimpriches are joint tortfeasors with the Zimpriches. Likewise for those defendants who got unauthorized copies from Legends. Plaintiffs expressly allege in their complaint that the Zimpriches and Legends worked with other defendants to commit acts of infringement. *See,*

*e.g.*, Dkt. 63, ¶¶ 175, 193, 197. And those defendants who assert affirmative defenses arising from the *Boehm I* settlement embrace their status as joint tortfeasors.

So plaintiffs did not have to bring suit against all the joint tortfeasors when it sued the Zimpriches and Legends in *Boehm I*. And after the abrogation of the one-satisfaction rule, the settlement with the Zimpriches and Legends does not *automatically* bar plaintiffs from suing the other joint tortfeasors in a subsequent suit. But that does not mean that the settlement of *Boehm I* has no effect on plaintiffs' ability to bring subsequent suits against the joint tortfeasors. Defendants contend that plaintiffs released claims against the joint tortfeasors in the settlement agreements and that claims against the joint tortfeasors are barred by the doctrine of claim preclusion.

### 1. Claim preclusion

The doctrine of claim preclusion, or res judicata, bars successive litigation of "any claims that were litigated or could have been litigated in a previous action." *Bell v. Taylor*, 827 F.3d 699, 706 (7th Cir. 2016). Claim preclusion applies not only to the specific issues actually decided, but to all grounds or defenses that could have been raised in the previous case. *Brown v. Felsen*, 442 U.S. 127, 131 (1979). The purpose of the doctrine is to ensure the finality of judicial determinations, to promote judicial efficiency, and to prevent vexatious litigation. *Id.*

Defendants Martin, Miller, Wredberg, Thomason, and Event USA contend that plaintiffs' dismissal of *Boehm I* has a preclusive effect on the claims against them. Plaintiffs' main argument against the application of claim preclusion here is that the one-satisfaction rule has been repudiated, and therefore plaintiffs are free to pursue defendants in a second suit. Dkt. 542, at 10-11. But plaintiffs' argument is extremely superficial. The doctrine of claim preclusion has obviously survived the repudiation of the one-satisfaction rule, *see, e.g.*, *Whole*

*Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2305 (2016), and that doctrine imposes a substantial limit on a plaintiffs' ability to seek relief from a joint tortfeasor in a subsequent suit. None of the defendants contends that the one-satisfaction rule bars plaintiffs' claims against any of the defendants in this suit.

But claim preclusion could bar those claims, if the elements are met. Claim preclusion applies when (1) the two lawsuits "arise out of 'a common core of operative facts'"; (2) the parties are identical or in privity; and (3) the first lawsuit resulted in a final judgment on the merits. *Bell*, 827 F.3d at 706 (quoting *Roboserve, Inc. v. Kato Kagaku Co.*, 121 F.3d 1027, 1034 (7th Cir. 1997)).

The first and third elements are less controversial here. As for the first element, to determine whether the same transaction is at issue in both cases, courts "consider the totality of the claims, including the nature of the claims, the legal basis for recovery, the law involved, and the respective factual backgrounds." *Bernstein v. Bankert*, 733 F.3d 190, 227 (7th Cir. 2013) (quoting *Ross ex rel. Ross v. Bd. of Educ. of Tp. High Sch. Dist. 211*, 486 F.3d 279, 284 (7th Cir. 2007)). Here, plaintiffs' claims in *Boehm I* and *Boehm II* involve the same law and legal basis for recovery. The same images are at issue in both suits. Plaintiffs alleged in *Boehm I* that the Zimpriches and Legends distributed infringing images to third parties, who in turn sold them to the public, and in some cases made further copies that were sold to the public. Now, in this case, plaintiffs bring claims against some of those third parties alleging infringement of the same images.

Plaintiffs argue that the defendants in this case have committed new acts of infringement beyond those committed by the Zimpriches and Legends. The defendants here, even if they initially got unauthorized images from the Zimpriches and Legends, also publicly

displayed those images and distributed them to the public, and in some cases made new copies of the photos. These are separate violations of the authors' exclusive rights, and thus separate acts of infringement. Plaintiffs contend that under *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962 (2014), a new act of infringement gives rise to a new cause of action, and thus it cannot be considered to arise from the same core of operative facts. But *Petrella* is simply not on point; it addresses the interaction of the copyright statute of limitations and the doctrine of laches. A new act of infringement triggers a new limitations period, but *Petrella* says nothing about whether a claim against a downstream infringer is subject to claim preclusion.

For purposes of claim preclusion, the acts of the joint tortfeasors are not analyzed in the formalistic way that plaintiffs propose. "[T]here is no formalistic test for determining whether suits arise out of the same transaction or occurrence." *Bernstein*, 733 F.3d at 227 (quoting *Ross*, 486 F.3d at 284). Claims against downstream infringers have been held to arise out of the same common core of operative facts as claims against the original, upstream infringer. For our purposes, this is the most important conclusion in *Bouchat v. Bon-Ton Department Stores, Inc.*, 506 F.3d 315 (4th Cir. 2007), a case cited by both sides here.[1] Bouchat, an amateur artist, had successfully proven that the Baltimore Ravens and the NFL's licensing agent had infringed his copyright in the Ravens' "Flying B" logo but failed to prove any damages. The artist filed multiple subsequent suits against the NFL's licensees, who had committed many new acts of infringement by making and selling products with the infringing logo. The Fourth Circuit held that despite undisputed additional acts of infringement, the

---

[1] *Bouchat*'s limited discussion of privity, which relies on the virtual representation theory of privity that has been rejected by the Seventh Circuit and the Supreme Court, *see Taylor v. Sturgell*, 553 U.S. 880, 891 n.3, 904 (2008), is less helpful.

claims against the licensees arose out of the same core of operative facts as the original suit against the Ravens and the NFL's licensing agent, *id*. at 327–28, and because the other elements were met, those claims were barred by claim preclusion. This conclusion is reinforced by other cases that have held that downstream infringers are jointly and severally liable with the original upstream infringer. *See, e.g., Agency France Presse v. Morel*, 934 F. Supp. 2d 547, 579, *modified in part*, 934 F. Supp. 2d 584 (S.D.N.Y. 2013); *Leonard v. Stemtech Health Scis., Inc.*, No. 08-cv-67, 2011 WL 6046701, at *16 (D. Del. Dec. 5, 2011); *McClatchey v. Assoc. Press*, No. 05-cv-145, 2007 WL 1630261, at *3 (W.D. Pa. June 4, 2007). The court concludes that the claims against the defendants in this case who got their images from the Zimpriches or Legends arise from the same core of operative facts as *Boehm I*, and thus the first element is met.

Defendants also satisfy the third element of claim preclusion, a final judgment. A stipulation of dismissal with prejudice is a final judgment for claim preclusion purposes. *See Golden v. Barenborg*, 53 F.3d 866, 868–69 (7th Cir. 1995). Plaintiffs contend that claim preclusion does not apply when the original claims were settled, relying on *Minix*, 597 F.3d 824. But that case is not on point. It holds that a plaintiff "is entitled to only one full compensation for any single, indivisible injury caused by the defendants, who are each jointly and severally liable for that injury." *Id*. at 830–31. And where one joint tortfeasor does not provide that full compensation, the full-compensation doctrine would not preclude plaintiff from suing the other joint tortfeasors. *Minix* deals with mootness on appeal; it says nothing about claim preclusion. For claim preclusion purposes, all that matters is that the first suit concludes with a final judgment, regardless of whether that final judgment was the result of a trial on the merits or a settlement. Remember that claim preclusion applies to all the issues

that *could have been brought* in the case; it does not matter whether the issues were actually decided.

The critical issue here is the second element, the identity of parties. If this element is not present, then claim preclusion presents no bar to a plaintiff's pursuing the other joint tortfeasors in subsequent cases. The parties in *Boehm I* and *Boehm II* are not the same, but defendants contend that they are in privity with the Zimpriches or Legends.

Privity requires that "(1) [t]he interests of the nonparty and her representative are aligned; and (2) either the party understood herself to be acting in a representative capacity or the original court took care to protect the interests of the nonparty." *Taylor*, 553 U.S. at 900 (citations omitted). Here, defendants' interests are generally aligned with the Zimpriches because they are joint tortfeasors, although that level of alignment alone would not be enough. Sometimes the interests of joint tortfeasors are adverse, as when one tortfeasor attempts to deny liability and place full responsibility on another. If mere status as joint tortfeasors were sufficient to align their interests, it would tend to run counter to the rule that a joint tortfeasor is not an indispensable party who has to participate in the original suit. *See, e.g., Salton,* 391 F.3d at 877.

But defendants have more than the typical alignment of joint tortfeasors. The Zimpriches and Legends would be obligated to indemnify defendants for claims arising from the infringing images that they provided. Under Wisconsin's version of Uniform Commercial Code § 2-312(3), goods sold by a merchant who regularly deals in goods of the kind are warranted to be "delivered free of the rightful claim of any 3rd person by way of infringement or the like." Wis. Stat. § 402.312(3). The prints and canvases that the Zimpriches and Legends sold to the joint tortfeasor defendants are goods to which this warranty attaches because they

"are movable at the time of identification to the contract for sale." § 402.105(1)(c). Whether the digital images, as opposed to the physical prints and canvases, are "goods" under the U.C.C. is a closer question. The court found no case addressing this particular issue, but the Seventh Circuit has held that custom software is a good, noting that there is "no reason why the UCC is not suitable to govern disputes arising from the sale of custom software." *Micro Data Base Sys., Inc. v. Dharma Sys., Inc.*, 148 F.3d 649, 654 (7th Cir. 1998); *accord Comshare, Inc. v. United States*, 27 F.3d 1142, 1145, n.2 (6th Cir. 1994). And this court has held that electricity is a good because it "has physical properties [and] is bought and sold in the marketplace." *GFI Wis., Inc. v. Reedsburg Util. Comm'n*, 440 B.R. 791, 800 (W.D. Wis. 2010). The court sees no reason why digital images would not be goods if custom software and electricity are. Thus, under Wis. Stat. § 402.312(3), the Zimpriches and Legends would be obligated to indemnify the joint tortfeasor defendants for plaintiffs' copyright infringement, which shows particularly close alignment of the interests of the Zimpriches and Legends with the interests of defendants here. *See also Foley v. Luster*, 249 F.3d 1281, 1288 (11th Cir. 2001) (allowing a cross-claim for indemnification under state common law brought by one group of defendants against another defendant accused of copyright infringement).

Which brings us to the second aspect of privity, whether the Zimpriches or Legends were acting in a representative capacity in settling the *Boehm I* lawsuit. The separate settlement agreements require separate analysis.

The language of the Zimprich settlement agreement shows that the Zimpriches were acting in a representative capacity. *See* Dkt. 373-2, ¶ 3. The settlement agreement released the Zimpriches themselves from any and all claims "pled or not pled, known or unknown, arising out of the substance of the claims" in the case. *Id.* The released parties included the customary

associates, such as the Zimpriches' "employees, agents, successors, heirs and assigns." *Id.* Most important for our purposes here, the released parties also included "all persons in concert or participation with them." *Id.* It's hard to conceive how "persons in concert or participation with them" would not include the joint tortfeasors. And in the covenant not to sue, plaintiffs agreed not only that they would not sue the Zimpriches directly, they also agreed that they would not do so *indirectly*. Again, it is hard to see how one would sue the Zimpriches indirectly, except by suing a party who would have a claim for indemnification against the Zimpriches.[2] The inescapable conclusion is that in negotiating the settlement agreement, the Zimpriches were attempting to foreclose plaintiffs' claims against potential joint tortfeasors so that the Zimpriches themselves could enjoy a full and final resolution of any potential claim against them.

The court reaches the opposite conclusion from the Legends settlement agreement. There is no indication in the settlement agreement that Legends undertook to act in any representative capacity in *Boehm I*. Unlike the Zimpriches' settlement agreement, the Legends settlement agreement does not contain a covenant not to sue, nor does it contain the broad release of "all persons in concert or participation with them." *Compare* Dkt. 373-2 *with* Dkt. 373-3. The court concludes that the joint tortfeasor defendants are in privity with the Zimpriches, but they are not in privity with Legends. Thus, the final judgment against the Zimpriches has preclusive effect, but the judgment against Legends does not. This means that

---

[2] The phrasing of the covenant reinforces that notion that it would reach claims based on acts committed by third parties. *See id.* ("The Photographers also hereby covenant not to directly or indirectly sue . . . the Zimpriches . . . on any claims . . . based on or arising out of any of the claims released hereunder, including any claims relating to the Zimpriches providing copies of the Images to any as of yet unidentified third parties.").

the joint tortfeasor defendants who got unauthorized images from Legends are still viable targets.

The next question is what claims are precluded. Claim preclusion bars successive litigation of any claims that were litigated or could have been litigated in *Boehm I*. But it "will not bar a subsequent suit based upon the same course of conduct as a prior suit if the second suit alleges wrongful behavior occurring after the judgment in the first suit." *Williams v. Gillette Co.*, 887 F. Supp. 181, 183–84 (N.D. Ill. 1995) (citing *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 328 (1955)) (concluding that claim preclusion did not apply to a patent infringement action asserting claims accruing after the first infringement action was settled).[3] After all, the defendants in *Boehm I* did not get a license to use plaintiffs' works indefinitely. But any new suit must be premised on genuinely new wrongs, not simply new manifestations of the same basic injury. *Cf. Supporters to Oppose Pollution, Inc. v. Heritage Group*, 973 F.2d 1320, 1326 (7th Cir. 1992) (holding that claims regarding the ongoing release of toxic pollution from a landfill were barred by claim preclusion).

The court concludes that claim preclusion bars any claim of infringement against the Zimprich joint tortfeasors based on infringing copies made before January 16, 2015, the date of the final judgment in *Boehm I*. New copies of plaintiffs' copyrighted works made after that date inflict injuries sufficiently distinct to regard them as not arising from the core of operative

---

[3] Despite *Lawlor*, the Seventh Circuit has held that claim preclusion "does not bar a suit based on claims that accrue after a previous suit was *filed*." *Smith v. Potter*, 513 F.3d 781, 783 (7th Cir. 2008) (emphasis added). But in this case, the date of judgment—January 16, 2015—is the rational cutoff date for claim preclusion purposes because in *Boehm I*, the court allowed plaintiffs to amend their pleadings to include new acts of infringement up until that date. *See Boehm I*, No. 14-cv-16, Dkt. 170 (setting a January 16, 2015 deadline for plaintiffs to assert new works infringed).

facts in *Boehm I*. But the continued public display or distribution of previously made copies is merely an ongoing manifestation of the injury addressed in *Boehm I*. The court notes that the covenant not to sue in the Zimprich settlement agreement would bar essentially these same claims. *See* Dkt. 373-2, ¶ 3; *supra* note 2. The court will specify which individual claims are precluded in the infringement analysis section below.

## 2. Release of claims

The joint-tortfeasor defendants, Event USA, Thomason, SBC, Wredberg, Martin, Miller, and AW, also contend that plaintiffs released claims against them in the settlement agreements with the Zimpriches and Legends and that plaintiffs are bound by their contractual obligations. The court is not persuaded.

The applicable legal principles are straightforward. The court must construe the settlement agreements under local contract law. *Pohl v. United Airlines, Inc.*, 213 F.3d 336, 338 (7th Cir. 2000). The parties agree that Wisconsin law should apply. Under Wisconsin law, settlement agreements must be read to "give effect to the parties' intent, as expressed in the contractual language." *Setizinger v. Cmty. Health Network*, 2004 WI 28, ¶ 22, 270 Wis. 2d 1, 676 N.W.2d 426. "[A] party releases only those other parties whom he intends to release." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 347 (1971); *accord Dietrich v. Trek Bicycle Corp.*, 297 F. Supp. 2d 1122, 1126 (W.D. Wis. 2003).

For reasons already discussed, the court concludes that the releases granted in the Zimprich settlement agreement would extend to the joint tortfeasors, at least up to the date of the judgment in *Boehm I*. But the releases in the Zimprich settlement agreement are contingent on plaintiffs receiving full payment from the Zimpriches, and full payment was not made. Because this condition was not satisfied, the releases are likely void. But the matter is of little

consequence here, because the preclusive effect of the judgment in *Boehm I* does *not* depend on the Zimpriches' compliance with the terms of the settlement agreement. Claim preclusion bars the claims against the Zimprich joint tortfeasors, even if the releases in the settlement agreement do not.

The releases in the Legends settlement agreement do not extend to joint tortfeasors. The Legends settlement agreement states that the contracting parties intended to "resolve and settle all claims of any kind that any Party may have against another Party relating to the Parties' claims and defenses in" *Boehm I*. Dkt. 373-3, at 1. This language makes clear that plaintiffs intended to release their claims against Legends only. The agreements also release the parties' typical associates, including "officers, directors, shareholders, managers, members, employees, agents, successors, heirs and assigns," excluding Getty Images, from liability. Dkt. 373-3, ¶ 2. Defendants are none of those things.

The contractual language shows that plaintiffs did not intend to release the Legends joint tortfeasors from liability. Accordingly, the court concludes that defendants' defenses based on releases in the Legends settlement agreement fail as a matter of law.

### 3. Full compensation from the Zimprich settlement

Event USA contends that plaintiffs cannot recover any damages from defendants here because the Zimprich settlement already fully compensated them for all acts of infringement. Event USA is correct that once a plaintiff receives full compensation from one tortfeasor, he is not entitled to further recover from the others. *See Minix*, 597 F.3d at 829–30.

The Zimprich settlement states that the Zimpriches' payment to plaintiffs is "full compensation for all past unauthorized uses of" plaintiffs' photos. Dkt. 373-2, ¶ 1. And for reasons explained above, the release and covenant not to sue would bar plaintiffs' claims against

the joint tortfeasors. So, under the terms of the settlement agreement, plaintiffs got all they could from the Zimpriches. But if the Zimprich settlement agreement is void, as plaintiffs now contend, then the full-compensation doctrine presents no bar from plaintiffs seeking their compensation from the Zimprich joint tortfeasors. But again, for purposes of this suit, this determination is of little consequence, because claim preclusion already bars plaintiffs' claims against the Zimprich joint tortfeasors.

Some defendants make arguments based on notions of impermissible double recovery, lack of standing, offset, breach of contract, and fair use. Just as with the full-compensation doctrine, none these theories would afford any further viable defense to plaintiffs' claims.

### 4. Ascribing willfulness to the joint-tortfeasor defendants

In *Boehm I*, the court held that the Zimpriches' infringement was willful. Plaintiffs contend here that because the joint tortfeasor defendants embrace their status as joint tortfeasors, the court should ascribe the Zimpriches' willfulness to them as well.

The court will decline to ascribe willfulness to the joint tortfeasor defendants simply on the basis of their status as joint tortfeasors. Copyright infringement is a strict liability tort, which does not require any intent to infringe. And it is entirely possible for one to be an innocent joint tortfeasor with one who infringes willfully. Imagine here that the Zimpriches falsely certified that the canvases that they supplied were duly licensed by plaintiffs. Those who sold those canvases would be joint tortfeasors, but they would not be willful infringers. Nor would their concession that they are joint tortfeasors with the Zimpriches be tantamount to an admission of willfulness. Joint and several liability applies to compensatory damages, but punitive damages are assessed separately against each defendant. *Minix*, 597 F.3d at 830. The

court will not conclude that these defendants willfully infringed plaintiffs' copyright simply because they are joint tortfeasors with the Zimpriches.

## B. Statute of limitations

No action under the Copyright Act may be maintained "unless it is commenced within three years after the claim accrued." 17 U.S.C. § 507(b). The Seventh Circuit has long applied the discovery rule of accrual, i.e., the claim accrues only when the injured party discovers, or reasonably should have discovered, the infringement. *See Gaiman v. McFarlane*, 360 F.3d 644, 653 (7th Cir. 2004). But the Supreme Court recently called the discovery accrual rule into question, using instead the incident of injury accrual rule, i.e., the claim accrues when the infringement occurs. *See Petrella*, 134 S. Ct. at 1969 & n.4. In *Petrella*, the Court acknowledged that the majority of circuits use the discovery rule and noted that the Court has "not passed on the question," but proceeded to analyze the case under the incident of injury accrual rule. *Id.*

The Seventh Circuit acknowledged *Petrella* in *Chicago Building Design, P.C. v. Mongolian House, Inc.,* and stated that "in light of *Petrella*, we now know that the right question to ask in copyright cases is whether the complaint contains allegations of infringing acts that occurred within the three-year look-back period from the date on which the suit was filed." 770 F.3d 610, 616 (7th Cir. 2014). But later in the opinion, the Seventh Circuit noted that it reserved the question of "whether *Petrella* abrogates the discovery rule in copyright cases" at that time. *Id.* at 618.

Given that neither *Petrella* nor *Chicago Building* expressly abrogated the discovery rule, the court must follow the Seventh Circuit's binding precedent and apply the discovery accrual rule to determine whether plaintiffs' claims fall within the three-year statute of limitations. *See*

*Design Basics LLC v. J & V Roberts Invs., Inc.*, 130 F. Supp. 3d 1266, 1282 (E.D. Wis. 2015);

*Frerck v. Pearson Educ., Inc.*, 63 F. Supp. 3d 882, 887 (N.D. Ill. 2014). Plaintiffs filed this suit

on June 19, 2015. Thus, they cannot recover on any infringing acts that they reasonably should

have discovered before June 19, 2012. Defendants do not argue that plaintiffs should have

discovered the infringing acts before June 19, 2012. So the court will deny defendants' motions

for summary judgment concerning their statute of limitations affirmative defense.

## C. Individual claims of infringement

To prove a claim for copyright infringement, plaintiffs must show (1) ownership of a

valid copyright, and (2) violation of one of the exclusive rights listed in section 106 of the

Copyright Act, such as copying, displaying, or selling the copyright owner's work. *Feist Publ'ns,*

*Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). There is no genuine dispute that plaintiffs

own copyright in the photos at issue in these summary judgment motions. Instead, the issues

submitted for determination on summary judgment focus on whether defendants violated

plaintiffs' rights and whether the violations were willful.

One note before turning to each defendant's individual acts of infringement. Plaintiffs

move for summary judgment on the affirmative defenses that many defendants listed in their

answers to plaintiffs' amended complaint: lack of standing, license, implied license, failure to

mitigate, waiver, acquiescence, estoppel, copyright misuse, statute of limitations, fair use, first

sale, claim preclusion, and innocent infringement. The court addressed some of these

affirmative defenses above and will address below the affirmative defenses that individual

defendants raise in their summary judgment motions or in opposition to plaintiffs' motion.

Those affirmative defenses not addressed in this opinion have been waived by defendants,

either explicitly, *see* Dkt. 555, at 7, and Dkt. 545, at 16, or implicitly, so the court will grant plaintiffs' motion for summary judgment on the remaining affirmative defenses.

### 1. Event USA

Event USA is a Wisconsin corporation doing business in Wisconsin. It is a retail defendant: it sells sports prints, posters, canvases, and other memorabilia online and in a Green Bay retail store. To make prints, posters, and canvases, Event USA's president, Dennis Garrity, visited Getty Images' website, selected the sports photos he wanted, and emailed Legends asking it to obtain the selected photos from Getty Images. Legends did so and then sold digital copies of the photos to Event USA. Plaintiffs contend that Legends obtained these photos from Getty under "comp" licenses that allowed Legends to use the photos only "in materials for personal, noncommercial use and test or sample use, including comps and layouts." Dkt. 498-51, at 2. Event USA argues that the evidence of the comp licenses is inadmissible.

At issue here is Event USA's alleged infringement of four of plaintiffs' photos: a photo of Green Bay Packers offensive tackle Derek Sherrod; a photo of Packers linebacker A.J. Hawk; a photo of Packers outside linebacker Clay Matthews; and a photo of Ryan Braun, left fielder for the Milwaukee Brewers, and Aaron Rodgers, Packers quarterback, shaking hands. *See* Dkt. 494-8 and Dkt. 228, at 3-7. On September 27, 2011, Event USA bought a digital copy of the Sherrod photo from Legends. Event USA directed a third party to produce 240 prints of the Sherrod photo. Event USA distributed some of these prints to its customers and sold four of the prints after having them autographed. On October 11, 2011, Event USA bought a digital copy of the Hawk photo from Legends. Event USA directed a third party to produce 194 prints of the Hawk image. Event USA distributed some of these prints to its customers and sold two of the prints after having them autographed. Event USA contends that in 2011, Legends

provided four prints of Boehm's Matthews image to Event USA and that Event USA has not copied, displayed, sold, or distributed the prints or any other products incorporating the Matthews image. Plaintiffs dispute this contention, adducing evidence that undermines Event USA's contention. On May 25, 2012, Event USA bought five canvases featuring the Braun/Rodgers photo from defendant David Thomason, who obtained them from the Zimpriches. Event USA later sold these canvases.

The parties cross-move for summary judgment that Event USA willfully infringed the Sherrod, Hawk, and Braun/Rodgers photos, identified in Dkt. 494-8; Event USA moves for summary judgment that it did not infringe the Matthews photo.

### a. Plaintiffs' Rule 56(d) argument

In their brief in opposition to Event USA's first motion for summary judgment, plaintiffs ask the court to deny or stay Event USA's motion under Federal Rule of Civil Procedure 56(d) to allow plaintiffs to conduct discovery necessary to respond to the motion. Dkt. 403. Rule 56(d) allows the court to deny or defer consideration of a summary judgment motion when the "nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." The nonmovant has the burden of stating why they "cannot adequately respond to the summary judgment motion without further discovery." *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 628 (7th Cir. 2014) (quoting *Deere & Co. v. Ohio Gear*, 462 F.3d 701, 706 (7th Cir. 2006)). The court has "broad discretion to deny" motions under Rule 56(d). *Dewitt v. Corizon, Inc.*, 760 F.3d 654, 660 (7th Cir. 2014).

The majority of Event USA's first motion for summary judgment hinges on its proposed affirmative defense of release. As discussed above, the release defense fails as a matter of law, so plaintiffs' Rule 56(d) argument is moot: this portion of Event USA's first motion for

summary judgment is denied. As for the portion of Event USA's first motion for summary judgment that concerns the Matthews image, plaintiffs argue in their brief in opposition that they could not adequately respond to this argument without first deposing Event USA's president, Dennis Garrity. Plaintiffs have since deposed Garrity. *See* Dkt. 439. They referred to Garrity's deposition in their brief in opposition to Event USA's *second* motion for summary judgment. *See* Dkt. 488 and Dkt. 490-5. But they have not moved for leave to file a supplemental response to Event USA's *first* motion for summary judgment, despite having ample time to do so. So the court will not deny or further delay consideration of Event USA's first motion for summary judgment.

### b. Event USA's direct infringement

Event USA admits to buying five canvases featuring plaintiffs' Braun/Rodgers photo from Thomason and reselling them. Thomason obtained canvases of the Braun/Rodgers photo from the Zimpriches, so claims based on this photo are barred by *Boehm I*, and the court will grant Event USA's motion for summary judgment on that claim. Event USA admits to buying digital copies of plaintiffs' Sherrod and Hawk photos from Legends, printing hundreds of copies of these photos, and selling or otherwise distributing the prints. Event USA adduces no evidence of a valid license authorizing Event USA to sell these prints and canvases, and so there is no dispute that Event USA infringed plaintiffs' copyright in the Sherrod and Hawk photos. Summary judgment of infringement in favor of plaintiffs is appropriate as to those two photos.

Plaintiffs contend that Event USA also infringed plaintiffs' copyright in the Matthews photo. Event USA admits that, in 2011, Legends provided four prints of the Matthews photo to Event USA, but it denies that it copied, displayed, sold, or distributed the prints or any other products incorporating the Matthews image. Instead, it contends that Legends provided

the prints to Event USA "for review" and that Event USA kept the prints in storage. Plaintiffs adduce no evidence that Event USA infringed the Matthews photo, but argue that Event USA's contention that it never infringed the photo is based on the "self-serving" declaration of its president, Garrity, and adduce evidence calling into question the veracity of Garrity's statements. As discussed above, plaintiffs' argument about the "self-serving" declaration is frivolous: Garrity's affidavit provides information within his personal knowledge. And plaintiffs miss the larger point: plaintiffs have the burden of showing that Event USA infringed the Matthews photo, and they have produced no affirmative evidence of infringement. Event USA is not required to prove the absence of infringement, so the Garrity declaration is actually unnecessary. Summary judgment in Event USA's favor regarding the Matthews photo is appropriate.

### c. Event USA's willfulness

Copyright infringement is a strict liability offense: a defendant is liable for infringement regardless of whether he intended to infringe. *Toksvig v. Bruce Pub. Co.*, 181 F.2d 664, 666 (7th Cir. 1950) ("Intention is immaterial if infringement appears."). But a defendant's state of mind can be highly pertinent to damages.

Event USA and plaintiffs both move for summary judgment on the issue of willful infringement. If plaintiffs can sustain their burden to show that Event USA is a willful infringer, they will be entitled to a higher award of damages. Willfulness is a factual determination for the jury, and the Copyright Act does not define the term. 17 U.S.C. § 504(c)(2); *Wildlife Exp. Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 511 (7th Cir. 1994). However, an infringer acts willfully if it "knows that its conduct is an infringement or if the infringer has acted in reckless disregard of the copyright owner's right." *Video Views, Inc. v. Studio 21, Ltd.*, 925 F.2d 1010,

1020 (7th Cir. 1991), *abrogated by Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994). Willful blindness—"a deliberate effort to avoid guilty knowledge"—counts as knowledge in copyright law, as in other areas. *In re Aimster Copyright Litig.*, 334 F.3d 643, 650 (7th Cir. 2003). Thus, if Event USA actively avoided full knowledge concerning its infringement, it may still be a willful infringer.

Plaintiffs contend that Event USA, as a sports memorabilia dealer in the business of selling reproductions of copyrighted works, must have known that plaintiffs' photographs were protected by copyright. That may be, but plaintiffs still have the burden to show that Event USA knew that Thomason and Legends did not have valid licenses in the photos they sold to Event USA. Plaintiffs have not adduced any affirmative evidence of Event USA's willfulness.

Plaintiffs adduce Thomason's 2008 statement that "I take a strong stance to prevent fraudulent items from entering the market place," Dkt. 498-89, at 8, and Garrity's testimony that he asked Thomason about the products he purchased and was confident that they were legitimate. Dkt. 439 (Garrity Dep. 144:5–145:4). This evidence supports only Event USA's contention that it had no reason to suspect infringement by Thomason until this lawsuit was filed. Plaintiffs assert that Event USA continues to sell memorabilia it obtained from Thomason, showing a pattern of infringing conduct that demonstrates Event USA's willfulness. But plaintiffs offer no evidence that the items Event USA is currently offering for sale are infringing. The mere fact that Event USA still buys items from Thomason is not relevant to Event USA's willfulness.

As for Legends, Garrity testified that he believed Legends was a "reputable company" that only sold properly licensed photos. *Id.* at 120:5-122:21. Garrity testified that Jason Sarchet of Legends told him that he had a special relationship with Getty because of the large number

24

of photos he bought from them and that he got a special rate. *Id.* at 98:14-20. Plaintiffs adduce Garrity's visits to Getty's website, which contains warnings and notices of restrictions on commercial use, to support their contention that Event USA was willfully ignorant of Legends' lack of authorization to distribute these photos. But the fact that commercial use of the photos available on Getty's website *may* have been restricted does not mean that commercial use of the photos Legends' obtained *was* restricted.

Plaintiffs have the burden to show that Event USA's infringement was willful, and they have adduced no evidence to create a genuine dispute as to whether Event USA was aware or willfully blind to the fact that its actions were infringing. As a result, summary judgment in favor of Event USA on the issue of willfulness is appropriate.

### 2. Martin and Miller

Defendant Jerry Miller is a supply defendant. He does business as Signature Sports, a wholesale distributor of sports memorabilia to retail merchants. Miller owns a building in McHenry, Illinois, where he does business. He leases part of this building to defendant Nicholas Martin, who does business as defendant Sports-4-Less, a retail merchant of sports memorabilia. Miller collects rent from Martin and, as described below, occasionally sells sports memorabilia to Martin, but otherwise has no control over Martin's business.

Plaintiffs contend that Miller and Martin committed infringing acts with physical reproductions of plaintiffs' photos obtained from the Zimpriches. Sometime before January 9, 2015, Miller purchased from the Zimpriches canvases and prints featuring five of plaintiffs' photos. He resold these infringing items to Martin, who in turn offered them for sale at his retail store and online, through Amazon.com and Martin's website, www.sports-4-less.com. Martin sold at least one canvas. Plaintiffs contend that Martin continued to offer infringing

items for sale online after Dan Zimprich told Miller that he should remove those items. Martin and Miller dispute this: they argue that Dan Zimprich never told Miller to remove any items from display. But Martin admits that he displayed and offered for sale items featuring two of plaintiffs' photos after plaintiffs' counsel sent him a cease-and-desist notice and after the court issued a preliminary injunction barring him from doing so.

Plaintiffs move for summary judgment that Martin and Miller willfully infringed plaintiffs' copyright in five photos and that Miller is contributorily and vicariously liable for Martin's and SBC's infringing acts. Martin and Miller assert claim preclusion as a defense. They move for summary judgment that plaintiffs' claims are precluded by *Boehm I*. Because plaintiffs' claims concern canvases and prints bought from the Zimpriches, claim preclusion applies and the court will grant summary judgment in Martin's and Miller's favor on these claims.

Plaintiffs also contend that sometime in 2013, Miller gave the Zimpriches a digital copy of plaintiffs' Soldier Field photo to print, and that at least one print of the photo was sold to defendant Scott's Brewery Collectibles, LLC. Miller contends that he did not give the Zimpriches a digital copy of this photo. Although this claim concerns a digital image that Miller gave *to* the Zimpriches, rather than physical reproductions that he obtained *from* the Zimpriches, plaintiffs still could have asserted claims against the Zimpriches concerning this image before judgment was entered in *Boehm I*. So claim preclusion bars plaintiffs' claim concerning the Soldier Field image and the court will grant summary judgment in Miller's favor on this claim.

Plaintiffs do not move for summary judgment on any other claims against Martin and Miller. But Martin and Miller move for summary judgment that they did not infringe any of

Stluka's photos, essentially limiting plaintiffs' claims to ones based on Boehm's photos. Summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Schacht v. Wis. Dep't of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999), *overruled on other grounds by Higgins v. Mississippi*, 217 F.3d 951 (7th Cir. 2000). Plaintiffs admit that they have no evidence showing that Martin and Miller infringed any copyright owned by Stluka, so the court will grant Martin and Miller's motion for summary judgment, which would limit plaintiffs' claims to photos in which Boehm holds copyright.

### 3. Svehla and SBC

Scott Svehla is the sole owner and managing member of SBC. They are retail defendants. SBC operates six stores in Illinois and Wisconsin where it sells, among other things, sports memorabilia. SBC offered for sale prints and canvases featuring four of plaintiffs' photos: a panoramic photo of Soldier Field, a panoramic photo of Lambeau Field, a panoramic photo of the Kohl Center, and a photo of former Wisconsin Badgers quarterback Russell Wilson. *See* Dkt. 63-3. SBC obtained these prints and canvases from the Zimpriches sometime before July 2014. (Plaintiffs contest this, but offer no evidence that SBC bought items from the Zimpriches after this date.)

Svehla and SBC move for summary judgment that plaintiffs' claims are barred by the Zimpriches' settlement agreement and that in any event, plaintiffs' claims are limited to the four photos plaintiffs have identified. Plaintiffs admit that they have not identified any infringement by SBC or Svehla other than the four photos discussed here. Dkt. 570, at 21. Because plaintiffs' claims concern canvases and prints bought from the Zimpriches, they are

precluded by *Boehm I*, and the court will grant summary judgment in Svehla's and SBC's favor and dismiss them from the case.

### 4. Gonnering and Scooter G Sports

Defendant Scott Gonnering owns and operates defendant Scooter G Sports as a sole proprietorship, through which he sells sports memorabilia online and in a retail store in Appleton, Wisconsin.

Plaintiffs seek summary judgment against Gonnering and Scooter G for willfully infringing plaintiffs' copyright in 23 photographs. Plaintiffs adduce photographic evidence that Gonnering offered items featuring 17 of plaintiffs' photos for sale in his store and online. *See* Dkt. 494-15. Gonnering contends that he is "not positive" that the prints and canvases he sold featured plaintiffs' photos, but this statement does not create a genuine dispute of material fact. He also contends that he obtained some reproductions from licensed sellers. But license is an affirmative defense, and Gonnering adduces no evidence in support of his contention. Gonnering states that he obtained some reproductions from the Zimprichs, but he doesn't explain which ones. Claim preclusion is also an affirmative defense, and Gonnering adduces no evidence that he obtained any of the specific prints and canvases at issue from the Zimprichs such that claim preclusion would apply. So summary judgment of infringement is appropriate as to these 17 photos.

In support of their motion for summary judgment on the remaining six photos, plaintiffs adduce Gonnering's emails to the Zimprichs asking for prints of many sports photos. *See* Dkt. 494-11, at 4–6. The written descriptions of some of these photos *could* refer to plaintiffs' photos (e.g., one email asks for "2 clay matthews framed pics," and Boehm owns copyright in a photo of Clay Matthews), but they could also refer to other photos in which plaintiffs do not own

copyright. Viewing the evidence in the light most favorable to Gonnering, plaintiffs have not shown that Gonnering infringed plaintiffs' copyright in the remaining six photos, and so the court will deny plaintiffs' motion for summary judgment concerning these photos. The court will give plaintiffs notice under Rule 56(f) that it will consider granting summary judgment of non-infringement regarding these six photos after giving plaintiffs a chance to respond.

Plaintiffs adduce no evidence that Gonnering's infringement was willful. Plaintiffs argue that Gonnering was willfully blind to the infringing nature of photos he bought from Wein because he did not question Wein about the legitimacy of the photos. But this amounts to negligence at most, and plaintiffs have not shown that any of the photos Gonnering requested from Wein were actually infringing. The mere fact that Gonnering is in the sports memorabilia business does not, without more, allow for a finding of willfulness. The court will deny plaintiffs' summary judgment motion on the issue of willfulness and will give plaintiffs notice under Rule 56(f) that it will consider granting summary judgment in favor of Gonnering regarding this issue after giving plaintiffs a chance to respond.

### 5. Andrew Wredberg and AW Artworks LLC

Andrew Wredberg is the founder and sole owner of AW Artworks LLC, a graphic design business. Wredberg and AW are supply defendants: they supplied prints, canvases, and digital copies of 12 of plaintiffs' photos to various sports memorabilia retailers, including the Zimpriches, Legends, and Gonnering. Plaintiffs contend that they copied and sold at least 9 more of plaintiffs' photos. *See* Dkt. 494-14. After receiving plaintiffs' cease-and-desist letter on April 30, 2013, Wredberg and AW stopped producing any sports memorabilia entirely. Wredberg contends that this letter was the first time he learned of any alleged infringement by anyone he worked with; plaintiffs contend that Wredberg knew about *Boehm I* before then.

Plaintiffs move for summary judgment that Wredberg and AW willfully, or at the very least not innocently, infringed plaintiffs' photos; Wredberg and AW move for summary judgment that any infringing activities they did commit were not willful and that they are not liable for any third party's infringement.

### a. Wredberg and AW's direct infringement

Plaintiffs move for summary judgment that Wredberg and AW infringed plaintiffs' photos by selling physical and digital copies of them.[4] Plaintiffs adduce Ciara Zimprich's declaration and Waukesha Sportscards and Robb Dobratz's interrogatory responses indicating that they obtained 12 of plaintiffs' photos from Wredberg and AW. *See* Dkt. 498-28, ¶ 20, and Dkt. 498-36. Wredberg sold the Zimpriches six of these images before October 21, 2014, so claims concerning those six images are precluded by *Boehm I*. *See* Dkt. 498-28, ¶ 20. The court will enter summary judgment in Wredberg and AW's favor as to those six images. As for the remaining six images, there's no evidence that Wredberg provided them to the Zimpriches before the *Boehm I* judgment. Wredberg claims that he does not remember seeing some of the photos plaintiffs accuse him of infringing, but the fact that Wredberg does not remember his infringing acts does not show that he did not infringe. Summary judgment in plaintiffs' favor is appropriate as to these six photos.

---

[4] Plaintiffs state that Wredberg and AW infringed 49 of plaintiffs' photos as listed in a document they prepared titled "Evidence of Unauthorized Copying by Wredberg & AW Artworks." Dkt. 494-14. But this document does not list 49 of plaintiffs' photos; instead, it lists 49 quotations of photo descriptions found in emails between Wredberg and Legends. The document indicates that these photo descriptions refer to 11 of plaintiffs' photos, nine of which have no other evidence of infringement. In their motion for partial summary judgment, plaintiffs adduce other documents listing photos that they allege Wredberg infringed. *See* Dkt. 118, ¶ 84; Dkt. 498-28; Dkt. 498-35; Dkt. 498-36; Dkt. 498-87. The court will construe plaintiffs' motion as requesting summary judgment on the photos listed in all of the documents plaintiffs adduce in support of their claims against Wredberg.

Plaintiffs contend that Wredberg and AW copied and sold nine more of plaintiffs' photos. *See* Dkt. 494-14. In support of this contention, plaintiffs adduce emails between Wredberg, other defendants, and the Zimpriches containing descriptions of photos. Just as with Gonnering, these emails are not sufficient evidence of Wredberg and AW's infringement. Plaintiffs have not met their burden of proving infringement of the remaining photos, and so the court will deny plaintiffs' motion for summary judgment concerning these photos and will give plaintiffs notice under Rule 56(f) that it will consider granting summary judgment in favor of Wredberg and AW regarding this issue after giving plaintiffs a chance to respond.

**b. Wredberg and AW's willfulness**

Plaintiffs move for summary judgment that Wredberg and AW's infringement was willful. They contend that Wredberg and AW willfully infringed plaintiffs' copyright because they continued to print items featuring plaintiffs' photos after learning of plaintiffs' lawsuit against the Zimpriches, *Boehm I*. But plaintiffs offer no evidence to support this contention: they adduce the fact that Wredberg worked directly with the Zimpriches and Legends, but that fact does not support an inference that Wredberg knew about *Boehm I* or otherwise knew that his acts were infringing. They also adduce a subpoena issued to Wredberg in *Boehm I*, but that subpoena was issued in October 2014, more than a year after Wredberg stopped his infringing acts. Plaintiffs point to no evidence to create a genuine dispute as to whether Wredberg was aware that his actions were infringing.

In their reply brief, plaintiffs also contend that Wredberg and AW willfully infringed plaintiffs' copyright when they printed and distributed plaintiffs' photos using images they received from the Zimpriches and Legends, because even if AW was authorized to print these photos for the Zimpriches or Legends, the authorization would not allow AW to distribute

these photos to *other* entities. Plaintiffs point out in reply that this distribution would have been in violation of the Legends "Printer Agreement" Wredberg signed, which required that Wredberg obtain approval for use of any of the photos that Legends sent him. But arguments raised for the first time in a reply brief are considered waived, as the opposing party has no chance to rebut them. *United States v. Adamson*, 441 F.3d 513, 521 n.2 (7th Cir. 2006). Plaintiffs have the burden to show that Wredberg willfully infringed plaintiffs' copyright, and they have not met that burden. So summary judgment in favor of Wredberg and AW on the issue of willfulness is appropriate.

### c. Wredberg and AW's innocence

Plaintiffs seek summary judgment that Wredberg and AW's infringing acts were not innocent. Like willfulness, innocent infringement is highly pertinent to damages. A finding of innocent infringement will lower the statutory minimum on damages from $750 to $200 per work infringed. 17 U.S.C. § 504(c)(2). An innocent infringer, as that term is used in the Copyright Act, is one who "was not aware *and had no reason to believe* that his or her acts constituted an infringement of copyright." *Id.* (emphasis added). Wredberg and AW bear the burden of proving that the infringement was innocent.

Wredberg and AW contend that they had no reason to believe that the photos they copied, printed, and sold were infringing because they acquired the photos from the Zimpriches, Legends, Waukesha Sportscards, and Scooter G Sports, who Wredberg assumed would not have asked AW to print these photos without having the rights to reproduce them. Wredberg argues that he also relied on these entities' affirmative statements implying that they had the right to reproduce plaintiffs' photos: the Zimpriches told Wredberg that the photos they sent him were their own; Legends told Wredberg that it owned the images it sent him and

asked him to sign a "Printer Agreement" requiring that he obtain approval for use of any of the images they sent him; Waukesha Sportscards and Scooter G Sports both represented to Wredberg that the images they sent him were their property. Finally, Wredberg and AW argue that the fact that they immediately stopped producing sports-related products upon receiving plaintiffs' cease-and-desist notice proves their innocent infringement.

But Wredberg and AW are in the business of selling reproductions of works protected under copyright law. They should have done more than rely on their assumptions and the implications of others. They have the burden of adducing evidence showing a genuine dispute as to whether they had no reason to believe that the photos were infringing, and they have not met that burden. So the court will grant plaintiffs' motion for partial summary judgment on the issue of Wredberg and AW's innocent infringement.

### d.  Wredberg and AW's indirect infringement

Plaintiffs contend that Wredberg and AW are liable for infringement by the Zimpriches, Legends, Waukesha Sportscards, and Scooter G Sports because they supplied the infringing products to these entities. Plaintiffs proceed under the theories of contributory and vicarious liability.

To prove contributory infringement, plaintiffs must show that Wredberg knowingly induced, caused, or materially contributed to infringement by the Zimpriches, Legends, Waukesha Sportscards, and Scooter G Sports. *See Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971). Plaintiffs have not adduced evidence that Wredberg *knew* that the photos he printed and distributed were infringing, so they have not met their burden of production regarding contributory infringement.

To prove vicarious infringement, plaintiffs must show that Wredberg (1) had the right and ability to supervise infringing activity by the Zimprishes, Legends, Waukesha Sportscards, and Scooter G Sports, and (2) had a direct financial interest in the infringing activity. *In re Aimster Copyright Litig.*, 252 F. Supp. 2d 634, 654 (N.D. Ill. 2002), *aff'd*, 334 F.3d 643 (7th Cir. 2003). Plaintiffs have not adduced evidence that Wredberg supervised these entities' infringing activities, so they have not met their burden of production regarding vicarious infringement. The fact that AW provided printing services for these entities does not support an inference that Wredberg could control their activities. The court will grant Wredberg and AW's motion for summary judgment on the issue of indirect liability.

### 6. Thomason

Defendant David Thomason does business as Fan4Ever. He is both a retail and supply defendant. He sold or distributed prints and canvases of three of plaintiffs' photos to the public and to Event USA: a photo of former Packers quarterback Brett Favre, a photo of Russell Wilson, and a photo of Ryan Braun and Aaron Rodgers shaking hands. Thomason obtained canvases featuring the Braun/Rodgers photo from the Zimprishes. Thomason contends that he bought prints of the Favre and Wilson photos from authorized licensees who had the rights to sell prints wholesale to retailers. Plaintiffs dispute this contention: they argue that Thomason did not obtain the prints from the dealers he identifies or that the dealers did not have the rights to sell the prints to him. Thomason possessed one more of plaintiffs' photos, depicting Favre and former Packers defensive end Reggie White. *See* Dkt. 498-77. Plaintiffs contend that Thomason infringed the White/Favre photo and an additional 15 of plaintiffs' photos. *See* Dkt. 494-13.

Plaintiffs move for summary judgment that Thomason willfully infringed two of plaintiffs' photos, the Braun/Rodgers photo and the White/Favre photo, identified in Dkt. 498-77. Plaintiffs purport to reserve the right to bring to trial infringement claims concerning up to 15 additional photos, identified in Dkt. 494-13. Thomason moves for summary judgment that his sale of the Favre and Wilson photos is protected by the first-sale doctrine and that any infringing activities he did commit were not willful.

### a. Thomason's direct infringement

Thomason obtained canvases of the Braun/Rodgers photo from the Zimpriches, so claims based on this photo are barred by *Boehm I*. The court will enter summary judgment in Thomason's favor on claims concerning the Braun/Rodgers photo.

Plaintiffs ask the court to enter judgment against Thomason regarding the White/Favre photo as a discovery sanction. But Thomason's discovery violations do not warrant that sanction. (Likewise, the court will not deny Thomason's motion for summary judgment as a discovery sanction, despite plaintiffs' request.) Plaintiffs submit evidence that Thomason possessed the White/Favre photo, but they do not present any evidence that Thomason sold, distributed, displayed, or otherwise infringed on plaintiffs' copyright in the White/Favre photo. Although Thomason admits that plaintiffs "might be correct on" the White/Favre photo, Dkt. 616, plaintiffs have the burden of proving Thomason's infringement of the White/Favre photo, and plaintiffs have not produced any evidence that Thomason infringed. Therefore, the court will deny plaintiffs' motion for summary judgment as to the White/Favre photo and will give plaintiffs notice under Rule 56(f) that it will consider granting summary judgment in favor of Thomason regarding this photo after giving plaintiffs a chance to respond.

Now turning to Thomason's motion for summary judgment regarding the Favre photo and the Wilson photo: Thomason claims that he acquired prints of these photos lawfully from licensed retailers, and so the first-sale doctrine precludes plaintiffs' infringement claims concerning these photos. Under the first-sale doctrine, the owner of a copy of a copyrighted work may "sell or otherwise dispose of the possession of that copy." 17 U.S.C. § 109(a). Thomason has the burden of proving that the prints at issue "were lawfully made or acquired." *Microsoft Corp. v. Harmony Computers & Elecs., Inc.*, 846 F. Supp. 208, 212 (E.D.N.Y. 1994).

Thomason claims that he bought the Favre prints from Photo File, an authorized licensee of various sports leagues that has the rights to sell prints wholesale to retailers. In support of this claim, Thomason adduces his interrogatory responses, in which he states that he "purchased some of the products incorporating the Subject Photographs from Photo File," Dkt. 453-1, at 7, and his declaration stating that he purchased prints of the Favre photo, specifically, from Photo File. Dkt. 452, at 2. Plaintiffs contest Thomason's claim, arguing that he has not produced any record of his purchase, despite plaintiffs' discovery requests. But Thomason's statement is admissible evidence that he lawfully acquired the prints, and plaintiffs offer no evidence to rebut Thomason's contention. The court will grant Thomason's motion for summary judgment concerning the Favre photo.

Thomason claims that he bought the Wilson prints from Earl Madden, an individual who paid plaintiff Stluka for the rights to the photo and then made prints. In support of this claim, Thomason adduces his sworn interrogatory responses, in which he states that he "obtained printed 8x10 and 16x20 photographs of [the Wilson photo] from Earl Madden." Dkt. 453-1, at 7. Plaintiffs dispute Thomason's claim, once again arguing that he has not produced any record of his purchase, despite plaintiffs' discovery requests. Plaintiffs also

adduce Stluka's testimony that Stluka sold Madden the Wilson image with the understanding that Madden would print only 200 copies of the image to be signed by Russell Wilson and sold directly to consumers. *Boehm III*, No. 15-cv-683, Dkt. 167 (Stluka Dep. 283:1-285:16). Drawing all reasonable inferences in plaintiffs' favor as the non-movants, the court concludes that they have raised a genuine issue of a material fact: if Stluka granted Madden a limited license to sell the Wilson prints directly to consumers only, Madden's sale to Thomason, a retail merchant, would have been beyond the scope of the license, and therefore Thomason would not have lawfully acquired the Wilson prints. *See I.A.E., Inc. v. Shaver*, 74 F.3d 768, 775 (7th Cir. 1996). So the court will deny Thomason's motion for summary judgment concerning his first-sale defense because there is a genuine dispute as to whether Thomason lawfully acquired the Wilson prints.

One note. Plaintiffs also contend that even if Thomason lawfully acquired the Favre prints and Wilson prints, he displayed them online, which is not protected by the first-sale doctrine. Although the first-sale doctrine does not "entitle the owner of a particular copy of a copyrighted item to publicly display copyrighted images to the world via the Internet," *Bryant v. Gordon*, 483 F. Supp. 2d 605, 613 (N.D. Ill. 2007), it does entitle the owner to "sell or otherwise dispose of" the copy. 17 U.S.C. § 109(a). Online display of lawfully acquired prints to promote their sale would be a fair use. § 107.

### b.  Thomason's willfulness

Thomason and plaintiffs both move for summary judgment on the issue of willful infringement.

Plaintiffs argue that Thomason had "storm warnings" that the products he bought and sold may be infringing and knew that he was required to purchase products only from officially

licensed dealers. They note a 2008 statement by Thomason that "I take a strong stance to prevent fraudulent items from entering the market place," Dkt. 498-89, at 8, and the testimony of Event USA's president, Dennis Garrity, that he asked Thomason about the products he purchased. But the fact that Thomason knew some sports memorabilia products were "fraudulent" does not give rise to the inference that Thomason knew, or was willfully blind to the fact that, the reproductions he bought, copied, and sold were infringing. Plaintiffs have adduced no evidence to create a genuine dispute as to whether Thomason was aware that his actions were infringing. Plaintiffs have the burden to show that Thomason's infringement was willful and they lack evidence to support their position. Therefore, summary judgment for Thomason regarding his willful infringement is appropriate.

### c. Thomason's indirect infringement

Plaintiffs argue that Thomason indirectly infringed plaintiffs' photos because he supplied infringing products to infringing third parties. Thomason moves for summary judgment that he did not indirectly infringe.

The elements of contributory and vicarious infringement are discussed above. Plaintiffs argue that Thomason contributed to infringement by terminated defendant Scheels All Sports, Inc., when he sold Scheels some canvases of a second photo of Brett Favre—not the photo at issue in Thomason's first-sale defense. But plaintiffs have not adduced any evidence showing that these Favre canvases were infringing. They argue only that the canvases did not contain a Photo File logo and Thomason has not indicated the source of the canvas. Plaintiffs have not met their burden of showing *any* infringement of this photo by Scheels or Thomason, let alone that Thomason knowingly contributed to the infringement.

Nor have plaintiffs established vicarious infringement. Plaintiffs argue that Thomason would be vicariously liable for any infringement conducted by his LLCs or corporate entities. There is no evidence in the record that Thomason's corporate entities infringed any of plaintiffs' photos, but even if they had, plaintiffs would still have to prove that Thomason had direct supervision or control over the infringing activity, and they have adduced no evidence of such control. Summary judgment in Thomason's favor on the issue of contributory and vicarious liability is appropriate.

### 7. Luke Wein and Beyond Studio Publishing LLC

Luke Wein is the founder and sole owner of Beyond Studio Publishing LLC, a printing business. Wein previously worked for Legends, where he printed canvases and other reproductions. In a series of emails throughout 2013 and 2014, Gonnering asked Wein to print many sports photos. Wein also provided prints for terminated defendant Waukesha Sportscards and Legends.

Plaintiffs seek summary judgment against Wein and Beyond Studio for willfully infringing plaintiffs' copyright in seven photos, identified in Dkt. 494-12. Wein and Beyond Studio have not responded to plaintiffs' motion, so the court accepts plaintiffs' facts as undisputed, but it draws all reasonable inferences from the undisputed facts in Wein and Beyond Studio's favor. After considering plaintiffs' undisputed facts, the court will deny plaintiffs' motion for summary judgment as to Wein and Beyond Studio. Plaintiffs' sole evidence of infringement is emails between Gonnering and Wein in which Gonnering requests prints of various sports photos. As discussed above, written descriptions of some of these photos *could* refer to plaintiffs' photos (e.g., one email asks for "4 small badgers helmet held by hand," and Stluka owns copyright in a photo of a University of Wisconsin Badgers helmet held by

hand) but they could also refer to other photos in which plaintiffs do not own copyright. Viewing the evidence in the light most favorable to Wein and Beyond Studio, plaintiffs have not shown that Wein and Beyond Studio infringed plaintiffs' copyright, and so the court will deny plaintiffs' motion for summary judgment concerning Wein and Beyond Studio and will give plaintiffs notice under Rule 56(f) that it will consider granting summary judgment in favor of Wein and Beyond Studio regarding this issue after giving plaintiffs a chance to respond.

## D. Judgment independent of the motion

As discussed above, the court has identified numerous issues that may be resolved, and that the court intends to resolve, before trial through judgment independent of the motion. Fed. R. Civ. P. 56(f). Specifically, plaintiffs have failed to establish:

- Defendants' infringement of photos for which plaintiffs have adduced only email descriptions

- Gonnering and Scooter G's willfulness

- Thomason's infringement of the White/Favre photo

The court invites plaintiffs to file with the court a brief response showing through citation to the record that there is a genuine dispute of material fact and that the court should not grant summary judgment against them on the issues identified above.

Plaintiffs state that they "reserve the right to bring any additional and/or subsequently discovered claims for infringement to trial." Dkt. 493, at 2. Some defendants wisely moved for summary judgment limiting plaintiffs' claims to certain images; the court will grant those requests, as discussed above. As for the remaining defendants, it is long past time for plaintiffs to plainly state the claims against them. In their Rule 56(f) response, plaintiffs must identify by defendant and image each viable infringement claim that they intend to take to trial. Plaintiffs may proceed on only those claims at trial. The court will direct the clerk of court to

schedule a telephonic status conference before Magistrate Judge Stephen Crocker to set a schedule for trial.

ORDER

IT IS ORDERED that:

1. The motions to amend pleadings by defendants Event USA Corp., Dkt. 368, David Dewayne Thomason, Dkt. 379, Scott Svehla and Scott's Brewery Collectibles, Dkt. 386, Nicholas Martin, Dkt. 401, Jerry Miller, Dkt. 402, and Andrew Wredberg and AW Artwork, LLC, Dkt. 486, are GRANTED.

2. Event USA's first motion for summary judgment, Dkt. 369, is GRANTED in part, consistent with this opinion.

3. Event USA's second motion for summary judgment, Dkt. 432, is GRANTED in part, consistent with this opinion.

4. Martin and Miller's motion for summary judgment, Dkt. 473, is GRANTED.

5. Svehla and SBC's motion for summary judgment, Dkt. 441, is GRANTED. Svehla and SBC are DISMISSED from the case.

6. Wredberg and AW's motion for summary judgment, Dkt. 479, is GRANTED in part, consistent with this opinion.

7. Thomason's motion for summary judgment, Dkt. 449, is GRANTED in part, consistent with this opinion.

8. Plaintiffs Scott Boehm and David Stluka's motion for partial summary judgment that defendants willfully infringed their copyrights, Dkt. 492, is GRANTED in part, consistent with this opinion.

9. Plaintiffs must respond to the court's Rule 56(f) notice on the issues identified in this opinion by October 11, 2017, showing why the court should not grant summary judgment against them on these issues.

10. The clerk of court is directed to schedule a telephonic status conference before Magistrate Judge Stephen Crocker to set a new schedule for the case.

Entered September 27, 2017.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge